CUSTODY OF A MINOR.

Plymouth.   December 12, 1973. — March 25, 1974.

Present: HALE, C.J., ROSE, GRANT, & ARMSTRONG, JJ.

*Minor.   Parent and Child.   Adoption.   Probate Court,* Decree.

In a proceeding in a Probate Court on a petition by the Division of Child Guardianship of the Department of Public Welfare under G. L. c. 119, § 23(C), for custody of an illegitimate child, a request included in the petition for the right to consent to adoption of the child required the consent of the child's mother also under c. 210, § 2, unless her consent was made unnecessary by c. 210, § 3, [72-74]; the necessity for her consent was not obviated under § 3 by a finding by the judge merely that she was "incompetent" and evidence not showing that any of the requisites of § 3 was met [74]; and, upon appeal by her from a decree, entered without her consent having been obtained, granting to the petitioner custody of the child and the right to consent to adoption, the interests of the child in the circumstances called for a reversal of the decree in its entirety and a rehearing of the matter in the Probate Court even if the judge's finding of incompetence of the mother might have supported the award of custody [75].

Two PETITIONS filed in the Probate Court for the county of Plymouth on May 14, 1970 and October 16, 1970.

The cases were heard by *Lawton, J.*

*James R. DeGiacomo (Judith K. Wyman* with him) for the appellants.

*Joseph A. Grasso, Jr.,* for the appellee, submitted a brief.

HALE, C.J.   These are appeals from decrees of a Probate Court which (1) dismissed a petition brought by two maternal great-aunts to be appointed guardians of a child, and (2) allowed a petition for custody of the child brought by the Division of Child Guardianship of the Department of Public Welfare (the Department) pursuant to G. L. c. 119, § 23(C).   Custody was awarded to the Department "with the right to place said child for adoption and with the right to consent to said adoption due to the incapacity of the mother."   The great-aunts have appealed from the decree which dismissed their petition.   The mother has appealed from the decree which awarded custody of the child to the Department. The probate judge filed a report of material facts, and the evidence is reported.

We summarize the pertinent facts.   The child was born on October 11, 1967.   Its mother had not married and never disclosed the identity of the child's father. From 1967 until early 1970 the child was reared in the home of its maternal grandparents, where its mother also resided.   The grandfather filed a petition for temporary guardianship on March 25, 1968.   A temporary order of custody was granted.   The grandfather subsequently became concerned about the welfare of the child due to the atmosphere in the home.   Late in 1969 he contacted the Department, and on January 6, 1970, he delivered the child to the Department.   Since that time the child has been in foster homes.   The Department filed its petition for custody in May, 1970, requesting therein the right to consent to the adoption of the child.   Consent of the mother was not obtained, and her counsel entered an appearance in opposition to its allowance.   In October of

1970 two maternal great-aunts of the child filed their petition for guardianship, to the allowance of which the mother assented. Hearings on both petitions were held in March and July of 1971.[1]

At the hearings the grandfather, a self-admitted alcoholic, described his daughter, the child's mother, as a "horrid" person, one who "grates on your nerves" and who was "awful hard to live with." He stated that there were frequent arguments at home between his wife and his daughter. He expressed his belief that if the child were placed with other relatives the child's mother would "haunt" them and would attempt to take advantage of their good intentions. He stated that his daughter "would be drawn by the fact that there were probably fringe benefits, like free board and room for the rest of her life [if the child were placed with relatives]," that she "just hates work, and she wants a free ride right through life," and that she "uses that child as a club on my wife and [me]." He characterized his daughter's attitude toward her child as "indifferent" and stated that he did not "think she has that much love for the child." His testimony was substantially corroborated by that of his son, who lived elsewhere during this period but visited the home regularly.

The grandmother described her daughter as "a little bit incompetent" but stated that she felt her daughter was capable of rearing the child. The grandmother expressed her opinion that the child's mother "needs somebody" and that she did not "think she should be alone with her child all the time, because she likes a little freedom." She further testified that she thought that her husband and son simply wanted the child out of the house, that the son was "jealous," and that the grandfather was easily influenced by the son.

---

[1] The 1968 petition of the grandfather was dismissed at his request. He also requested that the Department's petition be allowed.

The child's mother was apparently present during the hearings, but she did not testify. A guardian ad litem was appointed and filed a report. G. L. c. 215, § 56A. *Jenkins* v. *Jenkins,* 304 Mass. 248, 252-253 (1939). See also Rule 5 of the Probate Courts (1959). He reported, among other things, that "[e]ven a casual observation of . . . [the mother] reveals her inability to raise the child . . . herself. This impression is borne out by the history of her relationship with her parents, her employment history and psychological and psychiatric histories." He recommended that the best interests of the child would be served by separating it from its mother and placing it with the Department.

The judge found that the mother was "incompetent and that any hope of her being restored to any normal condition is questionable and remote." He further found that the grandparents "cannot cope with the very real duty of rearing this child and maintaining a home for their daughter." Dismissing the great-aunts' petition for guardianship, he found that "their offer to bring up this child was more a gesture of love for their sister . . . [the grandmother] than a genuine alternative to this Court," and that "[t]he age of these fine women and their complete lack of capacity to meet the needs of this child would make it impossible . . . to reasonably entertain their petition." The judge also found that if a request by certain other relatives to care for the child were granted, the mother "would find . . . [these relatives] wherever they went and would be a constant source of friction and embarrassment to them, but more importantly to the child." The judge concluded "that it is in the best interest of this child that the Division of Child Guardianship should make all the necessary plans for [its] adoptive placement . . . and it is for this reason that the petition of the Department of Public Welfare is allowed."

The judge's finding that the "aunts" of the mother "are not capable of caring for a child of such tender years" was warranted on the evidence, and, as no question of

law is raised in the briefs, the decree dismissing their petition for guardianship must be affirmed.

The mother's threshold contention with respect to the Department's petition is that the judge's findings were insufficient as a matter of law to deny her the right to consent to the adoption of her child. We agree. The Department filed its petition for custody pursuant to G. L. c. 119, § 23(C), as amended through St. 1962, c. 535. At the time the petition was filed, that provision authorized the Department to seek and accept "on order of a probate court the custody of any child under twenty-one years who is without proper guardianship due to the death, unavailability or *incapacity* of the parent or guardian, or on the consent of the parent or parents. . . . [S]uch custody to include the right to consent to adoption only when it is expressly included in the order of the court" (emphasis supplied).[2] It seems to us that in situations where, as here, the right to consent to the child's adoption is at issue, the provisions of G. L. c. 210 relating to petitions for adoption must necessarily be considered in conjunction with those of c. 119, § 23(C).[3] To hold otherwise would be to discard all the procedural and substantive safeguards of c. 210.

The relevant portion of c. 210, § 2 (as amended through St. 1970, c. 216) provided that no decree for adoption could "be made, except as hereinafter provided, without the written consent . . . of the mother . . . of the

---

[2] Subsequent amendments to this subsection have not materially altered its scope. See St. 1970, c. 888, § 5. The effective date of this amendment was to have been July 1, 1971 (see St. 1970, c. 888, § 31), but St. 1971, c. 470, postponed its effective date to November 1, 1971. See also St. 1973, c. 925, § 40.

[3] In this case only §§ 2, 3, and 3A of c. 210 need be considered. The provisions of § 2A (as amended through St. 1957, c. 184), specifying certain conditions which must be met before a decree of adoption can be entered, do not apply here. We cannot accept the suggestion in the Department's brief that the written approval of the Department required by subsection (E) of § 2A is the "consent to adoption" referred to in G. L. c. 119, § 23(C).

child, if illegitimate."[4] Section 3 (as amended through St. 1963, c. 71, § 1) enumerated certain circumstances in which the consent ordinarily required by § 2 would not be required.[5] Section 3A (as amended through St. 1964, c. 425) established a procedure independent of a petition for adoption which could be instituted by the Department to ascertain the necessity of procuring such consent.[6] We note that the 1964 amendment of that section

---

[4] The amendment of this section effected by St. 1972, c. 800, § 1, is not here material.

[5] "The consent of the persons named in section two, other than the child or her husband, if any, shall not be required if the person to be adopted is of full age, nor shall the consent of any such person other than the child be required if such person is adjudged by the court hearing the petition to be hopelessly insane, or is imprisoned in any penal institution under sentence for a term of which more than three years remain unexpired at the date of the petition; or if he has wilfully deserted or neglected to provide proper care and maintenance for such child for one year last preceding the date of the petition, and the foregoing provision shall be applicable to the parent or parents of the child and their consent shall not be required notwithstanding the absence of a court decree ordering said parent or parents to pay for the support of said child, and notwithstanding a court decree awarding custody of said child to another; or if he has suffered such child to be supported for more than one year continuously prior to the petition by an incorporated charitable institution or by a town or by the commonwealth; or if he has been sentenced to imprisonment for drunkenness upon a third conviction within one year and neglects to provide proper care and maintenance for such child; or if such person has been convicted of being a common night walker or a lewd, wanton and lascivious person, and neglects to provide proper care and maintenance for such child. . . ."

[6] "The department of public welfare, or any charitable corporation organized under the general or special laws of the commonwealth for the purpose of engaging in the care of children and being principally so engaged, may commence a proceeding, independent of a petition for adoption, in the probate court of Suffolk county in the case of the department, or of the county in which its office is maintained in the case of such incorporated charitable agency, to establish whether or not the consent of any person named in sections two and three shall be required to any subsequent petition for adoption of a child in the care or custody of such department or incorporated charitable agency, notice of such proceeding to be given to such person in such form as shall be prescribed by the court. Such consent shall not be required if the court finds that the best interests of the child will be

(St. 1964, c. 425) considerably broadened the scope of judicial discretion to dispense with the consent requirement in proceedings brought thereunder. *Consent to Adoption of a Minor,* 363 Mass. 537, 546 (1973). Compare *Consent to Adoption of a Minor,* 345 Mass. 706, 707 (1963). However, as no proceedings under § 3A were ever brought, the effect of that section on this situation need not be considered.

Our opinion is that insofar as the Department's petition under G. L. c. 119, § 23(C), requested the right to consent to the adoption of the child, the consent of the child's mother was also required by G. L. c. 210, § 2 (as amended through St. 1970, c. 216), unless it could be found that one of the specific conditions set forth in G. L. c. 210, § 3 (as then in effect), had been met so as to obviate the necessity of the mother's consent. The judge made no such finding. His finding that the mother was "incompetent" was insufficient as a matter of law to obviate the necessity for the mother's consent. Incompetence was not one of the "specified instances" set forth in § 3 (as then in effect) in which the consent requirement of § 2 (as then in effect) could be dispensed with. See *Beloin* v. *Bullett,* 310 Mass. 206, 209-210 (1941); *Consent to Adoption of a Minor,* 345 Mass. 706, 706-707 (1963). From our examination of the evidence reported, we are unable to conclude that any of the requisites of the then § 3 was met. Contrast *Adoption of a Minor,*

---

served by placement for adoption, and the court shall not in making its determination be limited by the conditions set forth in sections two and three or by any other provision of law, but shall give due regard to the ability, capacity and fitness of the child's parents or guardian and to the plans proposed by the department or other agency initiating such petition. If the court finds that such consent is not required, notice to such person under the following section shall not be required on any petition for adoption of such child subsequently sponsored by the department or said incorporated charitable agency, nor shall the consent of such person to such petition be required." That section was repealed by St. 1972, c. 800, § 3. The substance of its provisions is now found in G. L. c. 210, § 3, as appearing in St. 1972, c. 800, § 2.

355 Mass. 783 (1968); *Adoption of a Minor,* 357 Mass. 490, 491-492 (1970); *Adoption of a Minor,* 362 Mass. 882 (1972).

While the judge's finding of "incompetence" might have been supported by the evidence and might in turn have warranted so much of the decree as awarded the Department custody of the child (impliedly on the ground of incapacity), we nevertheless believe that the interest of the child would be best served by the reversal of the entire decree. It is a cardinal principle of our law that the paramount interest in a proceeding involving the care and custody of children is that of the child. *Purinton* v. *Jamrock,* 195 Mass. 187, 199 (1907). *Revocation of Appointment of a Guardian of a Minor Surrendered for Adoption,* 360 Mass. 81, 88 (1971). In this case the considerable lapse of time between the hearings on the original petitions and this decision makes it likely that many changes have occurred which might bear on the determination of the best interests of the child. We are confident that in any further proceedings the probate judge will hear evidence from all interested parties, including the Department, as to the nature of care and opportunities to be offered the child, in order to make a well informed determination of how best to serve the child's interests; such determination may or may not award custody of the child to the Department, and such award may or may not include the right to consent to the child's subsequent adoption.

The final decree allowing the Department's petition is reversed, and the cause is remanded to the Probate Court. Upon application, leave is to be granted the Department to amend its petition or to refile it in conformity with the presently applicable provisions of G. L. cc. 119 and 210. The final decree dismissing the great-aunts' petition for guardianship is affirmed.

*So ordered.*