CONSENT TO ADOPTION OF A MINOR
(and a companion case).

Suffolk.    February 5, 1973. — May 7, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Adoption. Probate Court, Jurisdiction, Notice, Decree.*

Where it appeared that the mother of a child in the care of a chari-
table corporation had informed the corporation of her address but
later, while living at that address, had refused all mail from the
corporation, that subsequently the corporation brought a petition
under G. L. c. 210, §§ 3 and 3A, to establish that the mother's
consent to her child's adoption would not be required, in which
it stated that the mother "was last known of [the address] . . . now
of parts unknown," and that the corporation had complied with
the court's order of service by certified mail and publication, but
that the mother had not accepted the notice mailed to her, a find-
ing that there was no fraud on the part of the corporation and
that the court was not fraudulently induced to take jurisdiction
was not plainly wrong. [542–543]
In a proceeding under G. L. c. 210, §§ 3 and 3A, to establish that the
consent of a parent to the adoption of her child would not be
required, notice by certified mail and by publication in accordance
with the court's order was sufficient to give the court jurisdiction
of the proceeding, even though the parent did not receive actual
notice. [543–544]
In a proceeding under G. L. c. 210, § 3A, as amended by St. 1964,
c. 425, a determination that the consent of a parent to a child's
adoption would not be required may be made without the finding
of facts necessary for such a determination under G. L. c. 210,
§ 3. [544–547]
Where it was determined in a proceeding under G. L. c. 210, § 3A,
that a parent's consent to the adoption of her child would not
be required, the parent could not maintain a proceeding under
G. L. c. 210, § 11, for leave to appeal from a decree allowing
adoption of the child. [548]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on June 11, 1971.

The case was reserved and reported by *Braucher*, J.

PETITION filed in the Probate Court for the county of
Suffolk on August 4, 1971.

The case was heard by *Wilson*, J.

*Harold Meizler* (*Bruce G. McNeill* with him) for the
petitioner.

*Charlotte Anne Perretta* for the Catholic Charitable Bureau of Boston, Inc.

QUIRICO, J. These are two cases between the same parties which were consolidated for consideration by this court. Both cases result from an earlier decree of the Probate Court allowing the adoption of the son of the petitioner by a person or persons whose identity is not disclosed in the record before us. One case was started by a petition filed for hearing by a single justice of this court, asking that the adoption decree be vacated, that the petitioner be informed of the identity and location of the adoptive parents and of the proceedings in which the adoption decree was entered, and that the petitioner be allowed to appeal from that decree under the provisions of G. L. c. 210, § 11.[1] That case is before us on a reservation and report by the single justice. The other case was started by a petition filed in the Probate Court on August 4, 1971, seeking to vacate a prior decree of a judge of that court that the consent of the petitioner was not required on a petition for the adoption of her son by other persons. That case is before us on the petitioner's appeal from a denial of the petition.

The case reserved and reported by the single justice is before us on the petition and answer, on his findings based on a stipulation, and his order that the case be continued generally pending the filing in the Probate

[1] The petition before the single justice was filed on June 11, 1971. At that time G. L. c. 210, § 11, read as follows: "The supreme judicial court may allow a parent, who, upon a petition for adoption, had no personal notice of the proceedings before the decree, to appeal therefrom within one year after actual notice thereof, if he first makes oath that he was not, at the time of filing such petition, undergoing imprisonment as specified in section three, or that, if so imprisoned, he has since been pardoned on the ground of innocence or has had his sentence reversed." As amended by St. 1972, c. 800, § 7, approved July 19, 1972, § 11 now reads as follows: "The supreme judicial court may allow a parent, who, upon a petition for adoption, had no personal notice of the proceedings before the decree and had neither waived notice in accordance with section two nor been the subject of a decree dispensing with need for notice in accordance with section three, to appeal therefrom within one year after actual notice thereof." This amendment during the pendency of these proceedings does not affect the result reached in this option.

Court of a petition to vacate the decree dispensing with the necessity for the petitioner's consent to the adoption. The question of law reported to the full court is whether any further action under G. L. c. 210, § 11, is warranted in view of the Probate Court's denial of the petition to vacate the decree relating to consent to the adoption.

The case appealed from the Probate Court is before us on a report of material facts found by the judge and on a report of the evidence presented in that court, which evidence consisted of oral testimony recorded in a transcript of ninety-seven pages and of two exhibits in addition to photographs of the child involved. See G. L. c. 214, §§ 24, 25, and c. 215, §§ 11 and 12. "In a probate appeal with a report of the evidence, the equity rule applies that the appeal opens all questions of fact, discretion and law presented by the record." *Culhane* v. *Foley*, 305 Mass. 542, 543. *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 178. *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444, 445. "We can find facts not expressly found by the judge, and if we are convinced that he was plainly wrong, we can find facts contrary to his findings." *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 569. *Gordon* v. *O'Brien*, 320 Mass. 739, 740. *Whitney* v. *Whitney*, 325 Mass. 28, 28–29. "But the court does not reverse a finding of fact that depends in part at least upon the view taken by the judge of the credibility of oral testimony, unless convinced that the finding is plainly wrong." *Culhane* v. *Foley*, 305 Mass. 542, 543. *Trade Mut. Liab. Ins. Co.* v. *Peters*, 291 Mass. 79, 84. *New England Trust Co.* v. *Commissioner of Corp. & Taxn.* 315 Mass. 639, 643. The facts pertinent to this appeal are stated in the following several paragraphs.

In May, 1967, the petitioner who was nineteen years old, unmarried and five months pregnant communicated with the respondent (Bureau) concerning her prospective hospitalization. She did so on advice of her counsel. She gave birth to a son on September 13, 1967. About five days later the child was removed from the hospital by the Bureau and placed in a foster home. The

petitioner signed a written consent which the judge found was for the Bureau to place the child in a foster home but which the petitioner contends was limited to the release of the child from the hospital. The consent was not introduced in evidence and it is unnecessary to resolve that conflict. It is clear that the petitioner at no time signed a written consent that her son be adopted or a waiver of notice of any petition to adopt him.

The petitioner visited her son at his first foster home about a dozen times in 1967 and 1968. She visited him at his second foster home once in October, 1968, and she visited him once at his third foster home in February, 1969, that being her last visit to him. The petitioner paid some part or all of the expense for hospitalization when her child was born, but she paid nothing to the Bureau or to any other person for the child's care and support after he left the hospital. When she received bills from the Bureau for her son's support she turned them over to her attorney, who was not her present attorney. She was not employed for the first half of 1968, but since then she has been regularly employed with earnings of $86 per week after tax deductions.

When the petitioner first communicated with the Bureau in May, 1967, she was living with her parents and a sister at a specific street address in Waltham (Waltham street address) which she made known to the Bureau, and she continued to live there until September or October, 1971.

On September 4, 1968, the Bureau filed a petition in the Probate Court alleging that on September 13, 1967, a son was born to the present petitioner, that it received the child from the petitioner, that it could place the child for adoption, that such placement and adoption would be in the child's best interests, and that the child's mother was the present petitioner, "last known of Waltham . . . now of parts unknown and who is unfit." The Bureau's petition concluded with a prayer for a decree under G. L. c. 210, §§ 3 and 3A, as amended, "establishing that the consent of . . . [the child's mother] shall not be re-

quired" on the petition for the adoption of the child sponsored by the Bureau.

The court issued a citation on the Bureau's petition to be served by certified mail, and, unless it should appear that she received actual notice thereof, then by publication for three successive weeks in a designated Boston newspaper. On September 18, 1968, the Bureau mailed a copy of the citation to the petitioner by certified mail, return receipt requested, addressed to her at the Waltham street address, which was then her correct address. Prior to that date the petitioner had received mail addressed to her by the Bureau at that address, but at some unspecified time prior to that date she had been advised by her then attorney not to receive or accept further mail at her home. The reason for such advice is not stated in the record. On October 4, 1968, the citation and the original envelope sent by the Bureau to the petitioner were returned to the Bureau unopened, with the notation thereon of "Addressee not available. Notice left 9/19/68." The Bureau also caused the citation to be published in the designated newspaper on September 17, 23, and 30, 1968. Presumably the petitioner did not see the published citation, but there is no finding thereon.

The petitioner contends that the judge of the Probate Court committed a number of errors of law in denying her petition to vacate the earlier decree declaring that her consent was not required on the petition for the adoption of her son. We consider them separately.

1. She contends that certain findings made by the judge were wrong as matter of law because there was evidence to the contrary, or that the more convincing evidence thereon was to the contrary. She also contends that the judge failed to make certain findings which he could have made on the evidence. These contentions are based almost entirely on oral testimony. In making or refusing to make particular findings the judge was first required to make preliminary decisions on the credibility and weight of the oral testimony. We do not substitute our judgment for his on those preliminary matters. We

are unable to say on this record that the judge was plainly wrong and we therefore do not disturb or add to these findings. It is unnecessary to describe or identify the disputed findings for the purpose of this opinion.

The petitioner filed no appearance or answer to the Bureau's petition described above. On January 7, 1969, the court entered a decree to the effect that the consent of the petitioner was not required for the adoption of her son sponsored by the Bureau. The child was thereafter adopted, the date thereof and the identity of the adopting parents not appearing in the record. It is stipulated in the proceeding before the single justice that on April 21, 1971, the petitioner learned of the adoption. The judge of the Probate Court found that she learned of the adoption in a telephone conversation with the Bureau in January, 1971, and that she consulted her present attorney about the matter in March, 1971. Since our decision does not turn on the exact date she learned of the adoption, it is unnecessary to resolve this conflict. The petition before the single justice of this court and the petition in the Probate Court to vacate the decree of January 7, 1969, followed as described earlier in this opinion.

2. The petitioner contends that for several reasons the Probate Court did not have jurisdiction to enter the decree that her consent to the adoption of her son was not required.

(a) One argument in support of this contention is that the Bureau's allegation that the petitioner was "last known of Waltham . . . now of parts unknown" was "untrue," "deceptive," and "false," and that it was a "fraud practiced by the . . . [Bureau] on the court and on the petitioner which operated to deprive her, as a party in interest, of her day in court." This argument, frequently repeated in the petitioner's brief, is not supported by the facts found by the judge. He found that "there was no fraud on the part of the Respondent [Bureau], nor was the Court induced by any fraud on the part of the Respondent [Bureau], its servant or agents, to take jurisdiction of proceedings involving the child"

of the present petitioner. That finding is not plainly wrong, and it disposes of the petitioner's argument on this point.

(b) Another argument by the petitioner on the question of jurisdiction relates to the service on her of the notice of the petition brought against her by the Bureau. General Laws c. 210, § 3A, inserted by St. 1953, c. 593, § 1, and as amended by St. 1964, c. 425,[2] provided that the notice on such petition be given "in such form as shall be prescribed by the court." The petitioner argues that she was entitled to "personal service" of the notice, that she was not so served, and that therefore the Probate Court was without jurisdiction. If her contention is that "personal service" requires service on her in hand, and that nothing less will suffice, she is mistaken. General Laws c. 215, § 46, provides that "[w]hen personal service is required of any citation issued by a probate court, the court may direct such service to be made by registered mail addressed to the party entitled thereto at his post office address. Further service may be ordered." The requirement of service by "registered mail" was satisfied by the use of "certified mail" in this case. G. L. c. 4, § 7, Forty-fourth, inserted by St. 1955, c. 683. The Bureau also complied with the court's additional order that, unless it appeared that the petitioner received actual notice, the citation be published in a newspaper.

The combined effect of the giving of notice by mailing and by publication satisfied the requirements of the order of the court and of the applicable statutes, and it was sufficient to give the court jurisdiction to issue the decree under attack. That jurisdiction did not depend on whether the present petitioner chose to receive the notice mailed to her or whether, as appears, she chose not to receive it and further to ignore the postal notice that the Bureau's letter was available to her. Her apparent choice

---

[2] General Laws c. 210, § 3A, was repealed by St. 1972, c. 800, § 3. Statute 1972, c. 800, made major changes in several sections of G. L. c. 210, and particularly in § 3 thereof relating to the requirement of consent of parents or other persons to the adoption of children.

of the latter course did not prevent the court from obtaining jurisdiction. *Checkoway* v. *Cashman Bros. Co.* 305 Mass. 470, 471, involved a Superior Court rule requiring that a certain notice be given "by delivering the same personally . . . or by mailing" the same. We held that "[u]nder this rule a notice by mailing otherwise sufficient is complete and effective immediately upon being deposited in the post office." See *Blair* v. *Laflin*, 127 Mass. 518, 521, and *Gloucester Mut. Fishing Ins. Co.* v. *Hall*, 210 Mass. 332, 335. Cf. *Thorndike, petitioner*, 270 Mass. 334.

(c) The petitioner also argues that if the Bureau had not made the alleged "untrue," "deceptive" and "false" allegation that she was "of parts unknown," the Probate Court might have ordered service of notice on her in hand rather than by mailing and publication. Since the judge found that the Bureau committed no such fraud as is alleged by the petitioner, we need consider this argument no further except to say that at best it is highly conjectural. Even if the Bureau had included the petitioner's actual street address in its petition, the Probate Court, by virtue of G. L. c. 215, § 46, could still have ordered service by mailing and publication.

3. The petitioner also claims that the decree that her consent to her son's adoption was not required is invalid because in that proceeding the judge failed to find facts which she contends are made essential to the validity of such a decree by G. L. c. 210, § 3, as amended through St. 1963, c. 71, § 1. We summarize the several applicable sections of G. L. c. 210, in effect at times material to these cases.

Section 2, as appearing in St. 1950, c. 737, § 1,[3] provided that "A decree for such adoption shall not be made, except as hereinafter provided, without the written consent of the child, if above the age of twelve; of her husband, if she is a married woman; of the lawful parents or surviving parent; of the mother only of the child, if

---

[3] Section 2 was further amended by St. 1970, c. 216, and by St. 1972, c. 800, § 1, but these amendments are not material to this decision.

illegitimate; or of the person substituted for any of the
above named by this chapter." Admittedly, there was no
such written consent in this case.

Section 3, as amended, provided that "The consent of
the persons named in section two, other than the child or
her husband, if any, shall not be required . . . if such
person" is adjudged hopelessly insane, or is imprisoned
under a sentence of which more than three years remain
unexpired, or has wilfully deserted or neglected to pro-
vide for the child for the previous year, or has suffered
the child to be supported for more than one year continu-
ously by an incorporated charitable institution, a town or
the Commonwealth, or has been sentenced or been con-
victed of certain specified crimes and neglects to provide
proper care and maintenance for such child.

Section 3A, as appearing in St. 1964, c. 425, provided
that "any charitable corporation organized . . . for the
purpose of engaging in the care of children and being
principally so engaged, may commence a proceeding, in-
dependent of a petition for adoption, . . . to establish
whether or not the consent of any person named in sec-
tions two and three shall be required to any subsequent
petition for adoption of a child . . . [in its care or cus-
tody]. Such consent shall not be required if the court
finds that the best interests of the child will be served
by placement for adoption, and the court shall not in
making its determination be limited by the conditions
set forth in sections two and three or by any other pro-
vision of law . . . . If the court finds that such consent
is not required, notice to such person . . . shall not be
required on any petition for adoption of such child sub-
sequently sponsored by . . . said incorporated chari-
table agency, nor shall the consent of such person to such
petition be required."

The petitioner contends (a) that her consent to her
son's adoption was required by § 2, and she did not give
her consent, (b) that her consent could be dispensed with
under § 3 if the judge first found that she fell into one
of the categories of persons whose consent is made un-

necessary under that section notwithstanding the general
sweep of § 2, and (c) that since the judge made no such
finding, the decree that her consent was not required is
invalid.  As to § 3A she argues that action thereunder
is also dependent on the finding of facts which under § 3
would make her consent unnecessary.  The Bureau ar-
gues instead that § 3A operates independently of § 3
and does not require a finding that the petitioner falls
within any of the categories listed in the latter section.
We agree with the Bureau's position.

The petitioner relies heavily on our 1963 opinion in
*Consent to Adoption of a Minor,* 345 Mass. 706, 707–708,
where we said "Section 3A neither states nor implies any
grounds other than those specified in § 3 for finding that
'consent is not required.'  The reference to 'the consent
of any person named in the previous two sections' indi-
cates the intention to look thereto for the standards for
the determination under § 3A.  Section 3A contains no
words appropriate to vest in the probate judge discretion
to modify or supplement the express requirements of §§ 2
and 3."

At its next session following that opinion the Legisla-
ture adopted St. 1964, c. 425, amending § 3A by insert-
ing therein a new second sentence which included the pro-
vision that "[s]uch consent shall not be required if the
court finds that the best interests of the child will be
served by placement for adoption, *and the court shall
not in making its determination be limited by the con-
ditions set forth in sections two and three or by any
other provision of law . . .*" (emphasis supplied).  It is
clear from this new statutory language alone that the
amendment has the effect of making the language quoted
above from *Consent to Adoption of a Minor, supra,* no
longer applicable in construing § 3A in its amended
form.  This conclusion is supported by an examination of
the history of the 1964 amendment.  The Division of
Child Guardianship of the Department of Public Wel-
fare was the petitioner in the adoption case cited and dis-
cussed above.  On November 4, 1963, the Commissioner

of Public Welfare, in making his annual report as required by G. L. c. 30, §§ 32 and 33, both as amended, included a recommendation that G. L. c. 210, § 3A, be amended in substantially the same manner as later accomplished by St. 1964, c. 425. The reason stated by the Commissioner for the amendment which he proposed was the following: "This suggested amendment of the law is proposed to make it possible for the Probate Court to more readily make available for adoption, children in the care of authorized children's agencies, without limitation by other provisions in the law when the Court deems this is in the best interest of the child and with due regard to the ability and fitness of the parent or guardian." 1964 House Doc. Nos. 64 and 69.[4]

After holding a hearing on the petition to vacate the earlier decree dispensing with the necessity for the petitioner's consent to the adoption of her son, the judge endorsed on the petition: "Denied after hearing (-Wilson, J.) December 3, 1971." As a result of that endorsement, a final decree should have been entered dismissing the petition. Neither the record on appeal nor our copy of the Probate Court docket entries in the case indicates that such a decree was ever entered. Nevertheless, on December 9, 1971, the petitioner filed a claim of appeal from "a decree of the Probate Court . . . on the 3rd day of December, 1971, whereby said Court denied her Peti-

---

[4] It is stated in 1964 Ann. Surv. of Mass. Law, § 8.3, that § 3A was amended by St. 1964, c. 425, "[t]o circumvent the type of result reached in *Consent to Adoption of a Minor*, 345 Mass. 706. The article continues: "The most casual reading of the new amendment evokes the observation that the probate judges are given broad power in adoption proceedings. This amendment illustrates quite aptly a shift in emphasis from the best interests of the parent to those of the child. In *Richards* v. *Forrest*, [278 Mass. 547, 553], the Court said: '. . . the first and paramount duty of the court is to consult the welfare of the child. To that governing principle, every other public and private consideration must yield.' It would appear that the protective provisions of Section 2, requiring the consent of certain parties, and the exceptions contained in Section 3 have been diluted further with the amendment of Section 3A. The efforts of the legislature in enacting the many amendments to the adoption consent provisions indicate that it recognizes that adoptions should be permitted when they are for the best interests of the child, and that any obstacle impeding such an adoption should be removed."

tion To Vacate Decree To Establish Consent to Adoption." Therefore, if, notwithstanding the state of the record, a final decree was entered dismissing the petition, the decree is affirmed. However, if, in fact, no such decree was entered, the parties having prosecuted this appeal as though one had been entered, a final decree shall be entered dismissing the petition and the petitioner shall have no further right of appeal therefrom.

By her petition before the single justice of this court the petitioner sought leave, under G. L. c. 210, § 11, to appeal from the decree allowing the adoption of her son so that she might raise the same question which she has since raised and litigated in the Probate Court, viz., whether her consent was essential to the validity of the adoption. The adverse decision of the Probate Court on that question having been affirmed above in this opinion, a final decree is to be entered by the single justice dismissing the petition which was the subject of the reservation and report to this court.

*So ordered.*