WESLEY LAVALLEY *vs.* JANET LAVALLEY (and a companion case[1]). No. 87-137. December 16, 1987. *Divorce and Separation,* Division of property, Alimony.

By the pertinent terms of each of the LaValleys' judgments of divorce, Janet was awarded $25 per week in alimony, and one half of the real estate acquired during the couple's twenty-four year marriage. On appeal, Janet challenges this combined award of alimony and property on the ground that it inadequately addresses her needs. See *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 819 (1985). See also *Zildjian* v. *Zildjian,* 8 Mass. App. Ct. 1, 14 (1979); *Partridge* v. *Partridge,* 14 Mass. App. Ct. 918, 919 (1982). We affirm.

At the time of the trial the husband and wife were forty-eight and fifty-two years old, respectively. Wesley is an experienced, self-employed carpenter

---

[1] The companion case is between the same parties.

enjoying good health. Janet, a high school graduate, is also in good health. The couple has one son.[2]

Prior to her marriage and until Wesley, Jr., was two and one-half years old, Janet worked full-time as a bookbinder in a local factory. From 1975 until 1980 she continued to work part-time as a school custodian while retaining primary responsibility for the care of the couple's son and home. Since 1980, Janet has worked as a housekeeper for a local rectory which pays her $62.33 per week.

Except for some real property, the parties have few assets of significant value.[3] Of no minor significance is the fact that these properties are heavily encumbered. Janet's position throughout the trial was that she be awarded both the marital home and the two-family house. It was Janet's intention that she continue to live in the marital home and rent the Arlington Street property. Under her proposal the potential rental income would be applied against the various liens detailed in the margin.[4]

The trial judge's solution was otherwise. He awarded Janet the Glendale Street home and one of the vacant lots of her choosing. Wesley received the Arlington Street property and the remaining Ware lot. He was also ordered to pay Janet $25 per week in alimony and to assume all but the Avco liability, for which Janet was to be responsible.

Once due consideration has been accorded to the § 34 factors of G. L. c. 208, a judge has broad discretion in fashioning a judgment, and his determination will not be set aside unless it is without foundation. *Rice* v. *Rice*, 372 Mass. 398, 402 (1977). See also *Rolde* v. *Rolde*, 12 Mass. App.

---

[2] The matter of child support for Wesley, Jr., now nineteen and a college student, is not before us. The issue was not raised on appeal, and it is our understanding that the parties have come to an agreement on this point.

[3] The couple owns two houses and two undeveloped lots. The trial judge fixed the value of these properties as follows:

Single family home on Glendale St., Easthampton, Massachusetts, valued at $74,000.

Two family home on Arlington St., Easthampton, Massachusetts, valued at $62,000.

Two building lots on Doane and Belchertown Roads, Ware, Massachusetts, valued at $5,000 each.

[4] At the time of trial the parties had the following joint liabilities:

| To Whom Owed | Amount | Secured |
|---|---|---|
| Avco Financial | $9,357,20 | mortgage |
| Town of Easthampton (taxes) | $5,600.00 | lien |
| Town of Ware | $1,650.00 | tax taking |
| Town of Easthampton | $ 200.00 | lien |

In addition, Wesley LaValley has the following liabilities:

| H. Floyd | $15,917.41 | judgment/execution |
|---|---|---|
| D. Williams | $ 2,253.85 | judgment/execution |
| Advogue Carpet | $ 3,500.00 | attachment |
| L. Allard | $ 3,000.00 | attachment |

Ct. 398 (1981); *Meghreblian* v. *Meghreblian,* 13 Mass. App. Ct. 1021 (1982); *Caldwell* v. *Caldwell,* 17 Mass. App. Ct. 1032 (1984).

The judge in the instant case faced a familiar Solomonic decision: dividing limited assets between two whose needs are indisputably acute. See *Anthony* v. *Anthony,* 21 Mass. App. Ct. 299, 304-305 (1985). We cannot say that the probate judge sliced the marital estate unreasonably. His underlying findings are neither internally inconsistent, *Beninati* v. *Beninati,* 18 Mass. App. Ct. 529, 536 (1984), nor plainly wrong. *King* v. *King,* 373 Mass. 37, 40 (1977). *Rolde* v. *Rolde, supra* at 401. See also Mass.R.Dom. Rel.P. 52(a) (1975).

Although one wishes that the judge had explained how he determined Wesley's wages to be $350 per week, his failure to do so is not fatal. *Bianco* v. *Bianco,* 371 Mass. 420, 422-423 (1976). *Rice* v. *Rice,* 372 Mass. 398, 401-402 (1977). When the case was presented, Wesley's weekly earnings were, in fact, $350. Even if that sum represented earnings from a short-term project, and there was expectation of higher weekly income in the near future, $350 per week stood as a reasonable indicator of Wesley's long-term *average* income. It was in the nature of his trade that Wesley's earnings might fluctuate widely, depending upon the availability of carpentry work. There was evidence that in some years Wesley earned $12,000, while in others he earned significantly more. The judge was entitled to consider the likelihood of lean weeks or months in estimating Wesley's income.

Janet's reliance on *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811 (1985), is misplaced. In the *Grubert* case the wife faced a dramatic decline in life-style upon divorce, while that of the husband was comparatively opulent.[5] Moreover, the husband had not been forthcoming about his finances and a probate judge was, therefore, warranted in drawing all reasonable inferences against the uncooperative party. *Id.* at 822.

Neither of those factors is visible in the instant case. The judge's alimony award, in light of Wesley's significant debts, does not permit Wesley to enjoy a self-indulgent life-style at Janet's expense. Nothing in the record suggests that Wesley has hidden income or secret assets which went untapped below. Compare also *Bak* v. *Bak,* 24 Mass. App. Ct. 608, 622-623 (1987).

The statutory authority to grant alimony lies in one spouse's need for support and the other spouse's ability to pay. *Gottsegen* v. *Gottsegen,* 397 Mass. 617, 624 (1986). That consideration properly informed the judge's alimony award and distribution of the couple's real estate holdings. Although Janet proposed to pay off all the various liens and encumbrances if she were awarded both homes, the trial judge was of opinion that Janet "presents

---

[5] In *Grubert* there was evidence that the husband's income after taxes in 1980 exceeded $100,000 and that profits from his wholly-owned electronic components company were steadily increasing. In addition, the evidence showed that Grubert owned a $42,000 pleasure boat, a $22,000 Cadillac automobile and that he enjoyed "other indicia of a high standard of living." *Grubert,* at 822.

no ability to accomplish the large financing that would be necessary" to do so. Her income, observed the judge, "would not enable her to make the monthly payments . . . and could lead to the loss of both pieces of real estate." Moreover, Janet's approach would leave her husband "with essentially no assets for his contributions in money and labor to the relationship."

In an absolute sense, the award to Janet is not adequate. The alimony order reflects the parties' mutually straitened circumstances and should not be regarded as immune from modification. See G. L. c. 208, § 37. *Schuler* v. *Schuler*, 382 Mass. 366, 370-371 (1981). Should Wesley's income change for the better or his debts be significantly reduced, a concomitant increase in Janet's alimony may be in order.

*Judgment affirmed.*

*John C. Jakobek, Jr.*, for Janet LaValley.
*Leon W. Malinofsky* for Wesley LaValley.