KENNETH R. WHELAN *vs.* KATHLEEN A. WHELAN.

No. 07-P-1356.

Norfolk. November 5, 2008. - July 6, 2009.

Present: DUFFLY, SMITH, & MILLS, JJ.

*Divorce and Separation,* Modification of judgment, Child support.

In an action in Probate and Family Court to modify child support, the judge
    erred in calculating the amount of the father's income from self-employment,
    and therefore, this court vacated the reduction in child support and remanded
    the matter for further proceedings [620-624], including a determination of
    the appropriateness of a retroactive award if an increase in child support is
    warranted [627]; further, this court provided guidance on the question what
    business expenses might appropriately be deducted from the father's gross
    receipts for purposes of establishing child support [624-627].
In an action to modify child support, the Probate and Family Court judge cor-
    rectly determined that the reference in the parties' separation agreement to
    "bonus income" was not synonymous with all income over that which the
    father enjoyed at the time of the agreement [627]; further, the judge did
    not err in ordering the father to obtain health insurance for himself, the
    mother, and the children, and in ordering the parties to contribute equally
    to the cost of such insurance [627-628].

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on January 28, 2003.

Complaints for modification, filed March 11, 2004, and
December 5, 2005, respectively, were heard by *Christina L.
Harms,* J.

*Whitton E. Norris, III,* for the mother.

*Robert Feigin* for the father.

DUFFLY, J. In this appeal from a judgment modifying child
support we consider whether a judge of the Probate and Family
Court employed the proper method in calculating the plaintiff
father's income from self-employment. When the plaintiff father,
Kenneth R. Whelan, became unemployed one month after the
parties divorced, he filed a complaint for modification of his

child support obligations. The defendant mother, Kathleen A. Whelan, filed a counterclaim seeking an increase in child support, retroactive adjustment, and modification of provisions governing health insurance for the children. The parties filed additional modification claims, as we shall discuss, all of which were consolidated. The consolidated action was tried before the probate judge, who reduced child support, rejected the mother's claims for back support and a credit for health insurance premiums, and imposed on the mother the obligation to contribute fifty percent of the cost of family health insurance. The mother appealed.

The mother's principal claims are directed to the method employed by the judge in arriving at the amount of the father's income from self-employment. That method, she first complains, calculated the father's annual income by using an income-averaging approach that improperly included a four-month period of unemployment. Second, she asserts, the judge erred in reducing the father's gross business income by expenses not shown to be related to production of that income. We agree and vacate so much of the judgment as depends on these determinations.

*Background.* The parties' divorce judgment nisi entered February 11, 2004, and incorporated the terms of their separation agreement of even date. Matters pertaining to the four children merged with the judgment.[1] See *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 235 (1987) (merged separation agreement retains no independent legal significance). As provided by the terms of the agreement, the parties share joint physical and legal custody of the two younger children, who remained dependant at the time of the modification trial and were residing primarily with the mother.[2]

At the time of the divorce the father, a software engineer, had recently become employed by Maytech Industries after a two-

---

[1]The agreement provides that neither is seeking alimony at present, "but neither waives the right to future alimony." This provision also merged in the judgment.

[2]One child was fourteen years old at the time; the other was eighteen and had matriculated at the University of Virginia in September, 2007. The father testified that the parties' adult son was living with him, his adult daughter was moving in "at the end of this month," and the two younger children spent every other weekend at his house.

year period of unemployment. The agreement reflects that his then-current annual base salary was $80,000. The mother's annual income at the time was $28,890. The agreement required the father to pay child support to the mother in the amount of $413 per week, which reflected a weekly credit of $18 for the cost of health insurance. He was obligated to maintain health and dental insurance for the benefit of the children as long as such coverage was available through his present employer, and "for the benefit of the Wife so long as the Wife remains eligible for coverage and that coverage can be extended . . . through his present employer at no additional cost to the Husband over and above family plan premiums." The parties were to share equally the children's reasonable uninsured medical and dental expenses. In addition, the father agreed to pay to the wife further child support of "thirty (30) percent of any bonus income over and above his current base salary of $80,000" if two children remained unemancipated, subject to downward adjustment if only one child remained unemancipated.[3]

Less than one month after the judgment nisi entered, the father filed a complaint for modification seeking a reduction in child support, alleging as a change in circumstances that he had lost his job at Maytech Industries on March 5, 2004. The mother filed an answer and counterclaim. She sought to increase child support to $512.57 per week,[4] as she was now providing health insurance for the children. These actions lay dormant for a period, as the father resumed employment one month or so later.

In December, 2005, the father filed a second complaint for modification seeking sole physical custody and child support from the mother, asserting among other things that he "has a new job that enables him to spend more time at home with the children." The mother's counterclaim sought increased child

---

[3]The provision additionally specified, "Said payments shall be made to the Wife on or within fourteen (14) days of receipt by the Husband of his excess income, in the form of his bonus income from his employer. The Husband shall include in his payment to the Wife a copy of his gross bonus check."

[4]The $99.57 requested increase was based on her allegation that she was providing health insurance at a weekly cost of $163.15. She sought half the cost, $81.57, plus the weekly $18 credit that the father had received when he agreed to provide health insurance, which lapsed when he was laid off.

support, payment of support arrears alleged to be due under the "bonus income" provision of the agreement, reimbursement for one-half of uninsured medical costs incurred by the mother and children, and an order that if due to the father's failure to provide health insurance coverage she must provide such coverage for herself and the children, he will pay her one-half the cost of such coverage.[5] A trial on all modification claims was conducted on June 8, 2007, and a judgment entered that reduced the father's weekly child support obligation from $413 to $392, ordered the mother to pay fifty percent of the cost of family health insurance, denied the mother's request for retroactive adjustments to child support, and implemented the parties' agreement concerning the daughter's college costs.[6] The mother's appeal challenges all but the latter aspect of the judgment.

*Discussion.* Following entry of judgment the judge issued findings of fact. The standard we apply in reviewing the judge's findings is set forth in *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 73 Mass. App. Ct. 29, 36-37 (2008):

> "In reviewing a matter wherein the trial judge was the finder of fact, 'we accept the judge's findings of fact as true unless they are clearly erroneous.' *Green* v. *Blue Cross & Blue Shield of Mass., Inc.*, 47 Mass. App. Ct. 443, 446 (1999), quoting from *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309 (1981), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948)."

See *Martin* v. *Martin*, 70 Mass. App. Ct. 547, 548-549 (2007). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

---

[5] A third modification complaint filed by the mother sought clarification of the parties' respective obligations for the daughter's college costs; this issue was resolved by agreement.

[6] The judgment does not specifically deny the father's request for change in custody but does so implicitly by not ordering a change in custody and continuing the father's obligation to pay child support. The father does not appeal from the judgment.

*Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203 (1986), quoting from *Anderson* v. *Bessemer City*, 470 U.S. 564, 573-574 (1985). Although we will not substitute our judgment for that of the probate judge, we will "scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts." *Kelley* v. *Kelley*, 64 Mass. App. Ct. 733, 739 (2005), quoting from *Iamele* v. *Asselin*, 444 Mass. 734, 741 (2005).[7]

The broad issue presented is whether the father has "demonstrate[d] a material and substantial change in circumstances sufficient to justify a reduction in his child support obligations." *Croak* v. *Bergeron*, 67 Mass. App. Ct. 750, 750 (2006). If he has not, a related question is whether the mother has met this burden and the judge erred in denying the mother's request to increase support. We discuss separately the mother's contentions, detailing relevant facts as found by the judge, supplementing those findings with undisputed facts in the record. See *Bassette* v. *Bartolucci*, 38 Mass. App. Ct. 732, 733 (1995).

1. *Father's income.* a. *Income-averaging calculation.* The probate judge reduced child support based on the father's "loss of employment, and subsequent self-employment, which has lowered his income," the "new expense to both parties of the cost of

---

[7]Earlier decisions, and a few of more recent vintage, suggest that appellate courts are not limited to findings made by the probate judge but may make additional findings if supported by the evidence. See *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 569 (1946); *Whitney* v. *Whitney*, 325 Mass. 28, 28-29 (1949); *Krokyn* v. *Krokyn*, 378 Mass. 206, 208 (1979).

As explained in *Consent to Adoption of a Minor*, 363 Mass. 537, 539 (1973), this standard applies in a probate appeal with a report of the evidence, where the equitable rule "opens all questions of fact, discretion and law presented by the record." *Ibid.*, quoting from *Culhane* v. *Foley*, 305 Mass. 542, 543 (1940). In such a case we " 'can find facts not expressly found by the judge, and if we are convinced that he was plainly wrong, we can find facts contrary to his findings.' . . . 'But the court does not reverse a finding of fact that depends in part at least upon the view taken by the judge of the credibility of oral testimony, unless convinced that the finding is plainly wrong.' *Culhane* v. *Foley*, 305 Mass. [at] 543. *Trade Mut. Liab. Ins. Co.* v. *Peters*, 291 Mass. 79, 84 [(1935)]. *New England Trust Co.* v. *Commissioner of Corp. & Taxn.*, 315 Mass. 639, 643 [(1944)]." *Consent to Adoption of a Minor, supra.* See *Felton* v. *Felton*, 383 Mass. 232, 239 (1981) ("we will not reverse findings made by the judge on the basis of oral testimony unless we are convinced they are plainly wrong").

COBRA health insurance," and the fact that the mother's income "has increased modestly since the date of divorce, from $28,890 in 2004, to $37,500 in 2007." Citing *LaValley* v. *LaValley*, 25 Mass. App. Ct. 918 (1987), the judge concluded that it was appropriate to average the father's fluctuating self-employment income, and to include therein periods of unemployment, and that "certain legitimate business expenses (such as auto, gas, insurance, phone, home office expense, etc.) . . . should be taken into consideration when computing his 'income.' "

The findings do not specifically set forth what the judge found to be the father's annual income, nor do the findings detail which of the father's claimed business expenses were found by the judge to be "legitimate business expenses." It is, however, readily apparent that the $21 reduction in weekly child support is based upon a Child Support Guidelines (Guidelines) worksheet in evidence that was prepared by the father, dated May 11, 2007, that listed his annual income as $79,872, or $1,536 per week, and the mother's annual income as $37,501.[8],[9]

The father asserts that he arrived at the figure of $79,872 "by deducting business expenses from the gross receipts and by averaging the resulting net figure over the entire period of his self-employment . . . comprising of April 1, 2006 through the end of December, 2006." The trial judge generally accepted this approach. We do not think it is supported by the evidence or decisional law.

The uncontroverted evidence reflects that, since the divorce

[8]The Guidelines are promulgated by the Chief Justice for Administration and Management of the Trial Court. The version of the Guidelines in force here, effective February 15, 2006, recite that they are not meant to apply where the combined gross income of the parties exceeds $135,000 or where the gross income of the noncustodial parent exceeds $100,000. In such cases the Guidelines set a "minimum presumptive level of support," with additional support awardable at the judge's discretion. Guidelines II-C (2006).

[9]By using these income figures and applying a reduction of $132 to reflect half of the weekly cost of health insurance, the father's calculations arrive at a weekly support order in the amount of $392. This is $21 less than the original order of $413. The father's annual income figure of $79,872 is substantially the same as that set forth on his financial statement dated June 8, 2007, which lists $1,529.21 as his weekly income from self-employment, net of business expenses. Annualized, that amount is $79,518.92 (he also reports $1.00 per week in interest income). His financial statement lists gross monthly business income as $7,904.84 (or $94,858 per year).

in February, 2004, the father was unemployed for about one month during 2004, then employed by Philips Advanced Metrology Systems (Philips), earning "about" $95,000. He left Philips in February or March, 2005, was unemployed for one month, and received unemployment compensation before becoming employed by The Math Works, Inc. (Math Works). The father's 2005 income, as reflected on his Federal income tax return and W-2 forms, was $121,076, consisting of $118,648 in wages,[10] $72 in interest income, $123 in State and local tax refunds, and unemployment compensation in the amount of $2,233.

The father asserts he ceased employment with Math Works on April 4, 2006, when he was laid off. At some point (the father testified it was in April, 2006, but the judge did not appear to credit this[11]), he commenced self-employment through his company, Cyber Engineering. According to the father's 2006 Federal income tax return and W-2 forms, his income in that year was $95,184.40, including $29,865.03 in wages from Math Works,[12] $8,414 in unemployment compensation, and reported net business income in the amount of $55,995 (with gross business receipts reported to be $64,275).[13] Gross business receipts for the first four months of 2007 totaled $48,825.

Even assuming that, as the father claims, he commenced self-employment in April, 2006, it is apparent that his income from

---

[10]We have included in the wage figure the $540 in elective deferrals reflected on the father's 2005 W-2 form from Math Works.

[11]The judge found that the father was unemployed for "several months in 2006" and that he "started self-employment in mid-2006." It is undisputed that in 2006 the husband received unemployment compensation in the amount of $8,414, which reasonably could be inferred to have been for the three-month period commencing with his April 4, 2006, termination from Math Works. The father's testimony that his first invoice for services was rendered in July, 2006, further supports this inference.

The judge further found that the father's unemployment was "not contrived." She concluded that "it [is] reasonable to first consider all of his gross self-employment income, then to deduct reasonable and ordinary business expenses, and finally to average the result over the entire period of his self-employment (April 2006 to December 2006 for 2006, and 2007 income to date of trial for 2007)."

[12]We have added to this wage figure an elective deferral in the amount of $2,735. See note 10, supra.

[13]The 2006 income figure also includes $64 in interest income and $846.37 in compensation from a local school district.

self-employment rose steadily, from gross receipts that, in 2006, averaged either $10,713 per month (based on six months of self-employment, commencing in July), or $7,142 per month (based on nine months of self-employment, commencing in April), to gross receipts that during the first four months of 2007 averaged $12,206 per month.

The picture that emerges of the father's employment since the divorce is that he was consistently employed in the same industry and his income, though fluctuating somewhat, was steadily on the rise and never dipped below the $80,000 annual salary he was receiving on the date of the divorce. See *Croak* v. *Bergeron*, 67 Mass. App. Ct. at 752 (husband "has a consistent history of working in the nuclear power industry although he, at times, has experienced periods of unemployment"). Briefly unemployed soon after the divorce, the father resumed employment at an increased annual salary of $95,000, remaining at this new job for the balance of 2004. He reported income of $121,076 for 2005, and income of at least $95,184 for 2006. Monthly income from self-employment in 2007 was greater than it was during 2006.

This scenario is far different from the circumstances in *La-Valley* v. *LaValley*, 25 Mass. App. Ct. at 920, where support was based on the husband's earnings as of the date of trial. We noted there that his income on that date ($350 per week, or $18,200 annualized) was "a reasonable indicator of [the husband's] long-term *average* income" from self-employment as a carpenter, on evidence that in some years he earned $12,000, and that his earnings might "fluctuate widely, depending upon the availability of carpentry work." *Ibid.* We compared this evidence to that in *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 813 & n.5 (1985), where "profits from [the husband's] wholly-owned electronic components company were steadily increasing." *LaValley* v. *LaValley*, supra at 920 n.5. See *Schuler* v. *Schuler*, 382 Mass. 366, 373 (1981) ("Where reduced income is temporary, a modification is not necessarily mandated").

The uncontroverted evidence at trial established that, in the three-and-one-half-year period since the divorce, the father's earnings had not decreased but indeed had increased substantially, and compelling evidence supports the conclusion that they were likely to remain, on average, at the increased level. On this

record, we are "left with the definite and firm conviction that a mistake has been committed." *Guardianship of Clyde*, 44 Mass. App. Ct. 767, 774 (1998), quoting from *Custody of Eleanor*, 414 Mass. 795, 799 (1993). We therefore vacate the judgment insofar as it reduces child support.

In light of the foregoing evidence, and the finding that indicates the mother's income has only "increased modestly" since the divorce, the judge should, on remand, consider whether an increase in support is warranted. It will be appropriate to consider not only the fact and amount of the father's increased income in determining whether "a material and substantial change in the circumstances of the parties has occurred," *Brooks* v. *Piela*, 61 Mass. App. Ct. 731, 734 (2004), quoting from G. L. c. 208, § 28, but also any increased needs of the mother and of the children as well as the station in life of the respective parties. *Brooks* v. *Piela, supra* at 734-735, and cases cited.[14]

b. *Business expenses.* On remand, the judge will be required to make additional findings, and if necessary take additional evidence, on the question what business expenses may appropriately be deducted from the father's gross receipts for purposes of establishing child support. We discuss this point to provide guidance on remand as to this question.

At trial, the father testified that he deducted from his gross weekly income those types of business expenses which he had deducted for tax purposes on his 2006 Federal income tax return. We earlier observed that the father's income from self-employment was determined solely on the basis of his financial statement. Schedule A on the financial statement lists gross monthly receipts in the amount of $7,904.84, or $94,858 per year, and sets forth $1,329 in monthly business expenses.[15]

---

[14]In this connection, the mother testified that she is fifty years old; that she resides in a two-bedroom condominium apartment where she sleeps on the living room couch or on an air mattress to give the children each a bedroom; and that she would be unable to continue living with her children in this apartment because her income and child support were insufficient to cover her expenses, which had not changed since the time of the divorce.

Relevant considerations will include the judgment provisions that increase the mother's expenses, by her contribution of one-half the cost of health insurance and twenty-five percent of the daughter's college expenses.

[15]Notable monthly deductions include $241 for expenses related to his automobile, $256 for mortgage interest, $308 for pension and profit sharing, $102

We begin by noting that gross income for purposes of establishing a child support amount is not necessarily the equivalent of a parent's taxable income. As the Guidelines clearly establish, the definition of income on which support may be calculated is very broad.[16] See *Rosenberg* v. *Merida*, 428 Mass. 182, 187-188 (1998) (Guidelines' definition of income is broad and includes Social Security Disability Income dependency benefits paid directly to dependent based on noncustodial parent's disability). Income is defined as "gross income from whatever source" — that is, a wage earner's income before deductions for taxes or retirement contributions. See, e.g., *Department of Rev.* v. *Foss*, 45 Mass. App. Ct. 452, 458-459 (1998) (deviation from Guidelines' computation of support not supported by consideration of

for utilities, $68 for taxes, and $83 for depreciation. On the question of business expenses, the father was asked about the automobile expense and testified that he had to "driv[e] all over creation" to find his sole client. He also testified that he had a dedicated home office when he worked at Math Works but when he became self-employed he expanded this to two rooms in his house. The business use of his home is reflected on his 2006 Federal income tax return, where he reports that his home has a total area of 1,200 square feet, of which 14.25 percent was devoted exclusively (for 24 hours per day, 365 days of the year) to business use. He testified that he worked both at his client's site and his home office; that he lived in the same home and drove the same car while working at Math Works; and that all four of his children were staying with him on either a full or part-time basis. See note 2, *supra*.

This testimony should be considered in determining the extent to which the father's deductions, such as for the business use of his automobile and his home, are overstated or, conversely, reasonable and necessary to the production of income.

[16]As provided by the 2006 Guidelines (with exceptions not relevant here), "income is defined as gross income from whatever source." Guidelines I-A (2006). Those sources include, but are not limited to, salaries and wages and income from self-employment; commissions; severance pay; royalties; bonuses; interest and dividends; income derived from business or partnerships; Social Security; veterans' benefits; insurance benefits, including those received for disability and personal injury; workers' compensation; unemployment compensation; pensions; annuities; income from trusts; capital gains in real and personal property transactions to the extent that they represent a regular source of income; spousal support received from a person not a party to the order; contractual agreements; perquisites or in kind compensation to the extent that they represent a regular source of income; unearned income of children, in the court's discretion; income from life insurance or endowment contracts; income from interest in an estate, either directly or through a trust; lottery or gambling winnings received either in a lump sum or in the form of an annuity; prizes or awards; net rental income; and funds received from earned income credit. *Ibid.*

father's "spendable income"); *Croak* v. *Bergeron*, 67 Mass. App. Ct. at 752 & n.6 (probate judge appropriately included in income premature individual retirement account distribution, a trust distribution, and earned income set forth on forms 1099 and W-2). Thus, at the very least, it was error to deduct from the father's gross income amounts for pension and profit sharing, and for taxes. See note 15, *supra*.

The 2006 Guidelines, in effect at the time of trial, do not specifically provide for deduction of business-related expenses from self-employment income. Indeed, these guidelines list in the definition of income from whatever source both "income from self-employment" as well as, by way of comparison, "net rental income." Guidelines I-A(1), (25) (2006). Nevertheless, we think it is implicit that such expenses may be deducted where they are reasonable and necessary for the production of income, and our decisional law supports this conclusion. See, e.g., *Smith-Clarke* v. *Clarke*, 44 Mass. App. Ct. 404, 406 (1998) (due to lack of substantiation and commingling of personal and business expenditures, judge properly could disregard certain claimed business deductions from husband's gross income or substitute a reasonable figure for others); *Maillet* v. *Maillet*, 64 Mass. App. Ct. 683, 689-690 (2005) (remand ordered where financial statement of husband, sole owner of business, set forth income of $800 per week, and "his corporation in 2002 had income of $227,744 exclusive of suspended losses and depreciation"). The recently promulgated Guidelines do not change the approach in this respect, but clarify it.[17] Thus, in determining income from

---

[17]New Child Support Guidelines became effective in Massachusetts on January 1, 2009. The new Guidelines define income as "gross income from whatever source regardless of whether that income is recognized by the Internal Revenue Code or reported to the Internal Revenue Service or State Department of Revenue or other taxing authority." Guidelines I-A (2009). With respect to income from self-employment, the new Guidelines provide that "[i]n general, income and expenses from self-employment or operation of a business should be carefully reviewed to determine the appropriate level of gross income available to the parent to satisfy a child support obligation. In many cases this amount will differ from a determination of business income for tax purposes." Guidelines I-C (2009).

The stated rationale for this clarification of the definition of income is as follows: "Comments were made concerning the lack of consistency in treatment of different forms of income and indicated some confusion concerning the method for calculating self-employment income. The Child Support

self-employment, a judge must determine whether claimed business deductions are reasonable and necessary to the production of income, without regard to whether those deductions may be claimed for Federal or State income tax purposes.

c. *Retroactive award.* On remand, if the judge determines that an increase in child support is warranted, the appropriateness of a retroactive award should also be determined. With respect to any period during which a complaint for modification is pending, a party is entitled to retroactive modification of a child support order where a judge finds that the parties' circumstances have materially changed and that such modification is in the best interests of the children. See G. L. c. 119A, § 13(*a*); G. L. c. 208, § 28. See also *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144, 146 (2000). A judge is not required to make an order for modification retroactive, but "absent a specific finding that retroactivity would be contrary to the child's best interests, unjust, or inappropriate," these factors should be considered. *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 812 (1999). If the father has been paying less than would otherwise have been required under the Guidelines, this "necessarily implies that the child has been receiving insufficient support during the pendency of the complaint." *Ibid.*

2. *Bonus income.* We agree with the trial judge that reference in the parties' separation agreement to "bonus income" is not "synonymous with 'all income over $80,000.' " The language is plain and unambiguous. See *Fried* v. *Fried*, 5 Mass. App. Ct. 660, 662-663 (1977). No payments are due the mother on account of bonus income of the father.

3. *Health insurance.* The judge did not err in ordering the father to obtain health insurance for himself, the mother, and the children, and ordering the parties to contribute equally to the cost of such insurance. The mother herself requested this relief in both counterclaims.

As to any claim for reimbursement of health insurance premiums paid by the mother since the divorce, to which the father

Guidelines Task Force expects the definition of gross self-employment income to help resolve these problems." Report of the Child Support Guidelines Task Force, at 34 (Oct. 2008).

made no contribution, we agree that the claim should be addressed and direct that the matter be considered on remand.[18]

*Conclusion.* We vacate paragraph 1 of the modification judgment, which decreases child support. We affirm the remainder of the judgment, regarding college costs, prospective health insurance costs, and bonus income. The matter is remanded for further proceedings consistent with this opinion. Because a lengthy period of time has elapsed since the entry of the modification judgment, the judge may in her discretion take additional evidence to reflect current circumstances.[19]

*So ordered.*

---

[18]It is thus unnecessary to consider the parties' stipulation, entered into after the date of the modification judgment, addressing the issue of health insurance, and we deny the father's motion to supplement the record.

[19]We deny the mother's request for appellate fees and costs.