NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-509

VANJA KOJUHAROVA

vs.

PETAR STEFANOV.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Vanja Kojuharova (mother) appeals from an October 26, 2023 modification judgment (second modification judgment) entered by a judge of the Probate and Family Court, modifying the parties' divorce judgment to alter the amount of child support owed by Petar Stefanov (father).  Specifically, the mother challenges the portions of the second modification judgment related to the attribution of her current gross income, the calculation of the father's gross income, and the retroactive date from which the father owes child support.  For reasons stated below, we affirm in part and vacate in part.

Background.  We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the

record, and reserving other facts for later discussion.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).

On October 19, 2017, the parties divorced and shared legal custody of their three children, with the mother having primary physical custody.  The husband was obligated to pay the wife $265 per week in child support.  At the time of the divorce, the mother worked as a senior software engineer at Harvard University and the father worked as a biomedical manufacturing technician at Fikst,[1] an engineering consultant.

Two years later, on November 5, 2019, the father filed a complaint for modification seeking primary physical custody of their oldest child, and a recalculation of child support payments.  On November 21, 2019, a Probate and Family Court judge issued a temporary order granting the father primary physical custody of the oldest child and ordering weekly parenting time with the mother.  On June 3, 2020, the mother filed her own complaint for modification.  After a trial, on May 25, 2021, a Probate and Family Court judge issued a modification of judgment (first modification judgment) to reflect the significant changes in circumstances since the original support agreement -- mainly the fact that the oldest child had been living with the father, as agreed to by the parties.  After

---

[1] In 2022, the husband's employer, FIKST, was acquired by his current employee, Rebuild FIKST.

2

applying the Child Support Guidelines, the father's child support obligation was removed and the mother was obligated to pay weekly child support to the father.

On March 16, 2022, the mother filed a complaint for modification on the May 25, 2021 modification of judgment and soon after filed a motion to suspend child support. On June 22, 2022, a trial commenced on the sole issue of the mother's request for a reduction or elimination of child support. On October 26, 2023, a second modification judgment was issued by a judge in the Probate and Family Court, terminating the mother's obligation to pay weekly child support and renewing the father's obligation to pay child support. The mother subsequently filed a motion to amend the second modification judgment, which was denied. This appeal followed.[2]

Discussion. The mother's argument centers around her disagreement with the judge's findings regarding both the mother's salary and the father's salary when determining the final child support obligation. Under G. L. c. 209C, § 9 (a), "if the court finds a parent chargeable with the support of a child," the court shall order the parent, in accordance with G. L. c. 209C, § 9 (c), to make payments "toward the current

_____

[2] The notice of appeal did not address the motion to amend the second modification judgment and on appeal the mother makes no separate argument related to it.

3

support and maintenance of the child." See Department of Revenue v. Mason M., 439 Mass. 665, 669 (2003). To determine the specific amount of child support, judges are required to follow the Massachusetts Child Support Guidelines (guidelines). See G. L. c. 209C, § 9 (c); Mason M., supra. "Our review of a child support modification judgment is limited to whether the judge's factual findings were clearly erroneous, whether there were other errors of law, and whether the judge appears to have based [her] decision on the exercise of sound discretion." Lizardo v. Ortega, 91 Mass. App. Ct. 687, 691-692 (2017). "The standard of review reflects substantial, but not unlimited, deference to the judge who saw the witnesses and heard the evidence." Pierce v. Pierce, 455 Mass. 286, 293 (2009).

1. Attribution of income to the mother. In the second modification judgment, the judge determined that for child support purposes the mother's gross weekly income was $2,541. The mother argues that the judge abused her discretion in making this determination because this figure is an estimation of the mother's total gross income if she worked full-time, rather than a reflection of her actual gross income, which is twenty percent less because of her reduced hours. We disagree.

It is within the province of the trial judge to make income attributions "where a finding has been made that either party is capable of working and is unemployed or underemployed." Fehrm-

4

Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 531 (2016), quoting Child Support Guidelines § I.E.  Relevant factors that the court considers when determining income level include the needs and care of the children, specific circumstances of the parent, and the availability of employment at the attributed income level.  See Child Support Guidelines § I.E. (2023). Additionally, "[i]f the Court makes a determination that either party is earning less than he or she could earn through reasonable effort, the Court should consider potential earning capacity rather than actual earnings in making its child support order."  Id. at § I.E.(2).

In this case, we discern no abuse of discretion where the judge considered all relevant factors when determining that the mother's full-time salary should be attributed for calculating child support.  Here, the mother by her own admission had initially reduced her hours to eighty percent because of the COVID-19 pandemic and the unique demand for childcare at the time.  However, the judge made specific findings that the children have since returned to full-time in-person school in the fall of 2021.  The mother alleges that she is still unable to return to full-time work despite the availability of increased hours because of demands related to the children's schedules and the mother's commute via public transportation. However, the judge did not credit her testimony as it related to

5

her commuting issues, and found that there was insufficient evidence to support a finding of a material change in circumstance from the first modification judgment where the court found that the mother's working hours would increase once the children returned to full-time school. See Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995) ("the credibility of a party . . . who appeared at trial is quintessentially the domain of the trial judge"). We discern no abuse of discretion.

2. Calculation of the father's income. According to the second modification judgment, the judge calculated the father's income by referencing his W-2 forms (W-2) from 2021 and 2022, and pay stubs for 2023. The mother argues that this was an error because specific income information was omitted from the W-2s, such as employer 401(k) retirement account (401k) contributions, bonus income, and income from the father's previous employer.[3] We address each in turn.

a. 401k contributions. The Supreme Judicial Court in Cavanagh v. Cavanagh, 490 Mass. 398, 417 (2022), unequivocally held that "employer contributions to a retirement account constitute income for the purposes of calculating child

_____

[3] Under the guidelines, income is defined as "gross income from any source" and is not "necessarily the equivalent of a parent's taxable income" as indicated in a W-2. Whelan v. Whelan, 74 Mass. App. Ct. 616, 625 (2009).

support."  Here, the judge omitted the father's employer contributions to his 401k retirement account from 2022, $3,694.04, and 2023, $1,299.12.  Accordingly, we remand for the judge to recalculate the father's 2022 and 2023 income consistent with Cavanagh and make any necessary adjustment to the child support aspect of the second modification judgment

b.  Father's bonus income.  The guidelines define "income" in a broad manner and expressly include "bonuses" as income.  See Guidelines § I-A (6).  Even fluctuating, nonguaranteed bonuses must be considered as part of the evaluative criteria set in the guidelines, although the judge has the ultimate discretion on whether child support based on the bonuses shall be awarded.  See Levitan v. Rosen, 95 Mass. App. Ct. 248, 256 and n.12 (2019).

In this case, the father has a record of receiving fluctuating bonuses in 2021, 2022, and 2023.[4]  The judge incorporated the $5,227 in bonus income that the father accumulated over the first three months of 2023 into his total salary calculation by averaging the three-month total bonus across fifty-two weeks -- adding just $100 per week.  However, this method of calculation overlooks the fact that the father

---

[4] According to pay stubs in the record, the father received $26,500 in bonus income in 2021; $21,5000 in 2022; and $5,227.24 through the first three months of 2023.

7

received over twenty thousand dollars in bonus income in 2021 and 2022 and he did not testify that his 2023 bonus income would be lower. The $21,000 bonus from 2022 spread over fifty-two weeks was $413.46 per week. Therefore, without specific reasoning from the judge explaining why she did not consider previous bonus income when calculating the father's 2023 income, we remand for further findings and clarification by the judge and any necessary adjustment to the child support aspect of the second modification judgment.

c. Unused paid time off. The mother argues that the judge erred in failing to incorporate the father's payout of $4,718.70 in unused paid time off from his previous employer, when calculating his 2022 income. Under the guidelines, income expressly includes "wages." See Guidelines § I-A. The Wage Act, G. L. c. 149, § 148, specifically provides that the term "wages" includes holiday and vacation pay. See O'Connor v. Kadrmas, 96 Mass. App. Ct. 273, 287 (2019). The judge in the second modification judgement provided no explanation for the omission of these wages in either the judgment or accompanying findings of fact. Accordingly, we remand for further findings on these omitted wages and their inclusion in the father's 2022 income calculation, and any necessary adjustment to the child support aspect of the second modification judgment.

3. Retroactive child support calculation. The mother argues that the judge improperly calculated the retroactive child support by excluding up to nine additional eligible months, thereby unjustly enriching the father. When it is in the best interest of a child and circumstances have materially changed, a party may be eligible for retroactive modification of a child support order. See Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 11 (2016). "A judge is not required to make an order for modification retroactive, but 'absent a specific finding that retroactivity would be contrary to the child's best interest, unjust, or inappropriate,' these factors should be considered." Id. at 11-12, quoting Whelan v. Whelan, 74 Mass. App. Ct. 616, 627 (2009).

In this case, the judge agreed that retroactive child support payments to the mother were appropriate and set the retractive date to "the first Friday in 2023," because by the end of 2022 the father had more "fully realized the average income" determined by the judge in the proceedings. However, it is unclear from the judge's reasoning why the end of 2022 marks when the father fully realized his income, when the judge had already determined in her findings that the father had an "increase in his income from the prior [2021] judgment" and this increase was reflected in his salary for the entirety of 2021

9

and 2022.[5]  Given this discrepancy, we remand the case for a new determination of the date to which the modification of child support shall be retroactive or for an explanation of why it should not be retroactive to the date the modification complaint was filed -- March 18, 2022.  See Whelan, 74 Mass. App. Ct. at 627, quoting Boulter-Hedley v. Boulter, 429 Mass. 808, 812 (1999) ("If the father has been paying less than would otherwise have been required under the Guidelines, this 'necessarily implies that the child has been receiving insufficient support during the pendency of the complaint'").

Conclusion.  Numbered paragraphs 3 and 4 of the orders contained in the October 26, 2023, modification judgment pertaining to the father's child support obligation and retroactive adjustments of child support are vacated and the matter is remanded for further proceedings consistent with this decision.  The modification judgment is otherwise affirmed. During the pendency of the remand, the father shall continue

---

[5] The judge found that the father had earned $87,682 in 2021 and $90,024 in 2022.

10

paying child support of $104 per week, unless it has been or is otherwise ordered by the judge.

<u>So ordered</u>.

By the Court (Henry, Smyth & Toone, JJ.[6]),

*Paul Little*

Clerk

Entered:  July 24, 2025.

---

[6] The panelists are listed in order of seniority.