Plymouth Family Division
No. 2011-483

## IN THE MATTER OF NANCY E. WOOLSEY AND GRANT E. WOOLSEY

Argued: June 7, 2012
Opinion Issued: October 30, 2012

*Martin, Lord & Osman, P.A.*, of Laconia (*Judith L. Homan* on the brief and orally), for the petitioner.

*Seufert, Davis & Hunt, PLLC*, of Franklin (*Lexie Rojas* on the brief and orally), for the respondent.

HICKS, J. The respondent, Grant E. Woolsey, appeals an order of the Plymouth Family Division (*Rappa*, J.) modifying his child support obligation to the petitioner, Nancy E. Woolsey. We reverse and remand.

The trial court found, or the record supports, the following relevant facts. The parties have two daughters who, at the time of the order, were seventeen and fourteen. The respondent is a self-employed truck driver, doing business under the name Fox Ridge Reliance (the business). He transports construction materials from April to December and plows snow in the winter and spring. Before working as a truck driver, the respondent had been employed selling recreational vehicles at a salary of $50,000 per year.

According to his business's 2008 profit and loss statement, the business had gross income of $70,451.48; the net, after business expenses of $42,947.79 were deducted, was $27,947.79. The respondent took that amount as his personal income. The 2009 profit and loss statement showed gross income of $50,601.08; after expenses of $25,556.85 were deducted, the net was $25,044.23, which the respondent again took as personal income. For 2010, the profit and loss statement showed $49,624.86 in gross income, and $24,652.97 in expenses, leaving $24,971.89 for the respondent's income.

On December 8, 2010, the respondent moved to modify a child support order issued on January 28, 2008. He alleged a substantial change in circumstances due to the economic downturn. For instance, he testified that although he had regularly received work from Ambrose Brothers in the past, he did no hauling for that company in 2010 "because the economy had gotten so horrible." In addition, he testified that his fuel expense had gone up because of the economy.

The petitioner questioned the respondent's business expenses, argued that he is underemployed, and alleged that he had additional income he was not reporting to the Internal Revenue Service or to the court. She argued that the respondent did not show signs of financial hardship, and asked the court to find that he is financially capable of paying his original support obligation.

Under the 2008 order, the respondent was obligated to pay $189.00 per week in child support. At the time of the hearing, he was $12,907.00 in arrears and had not been current since 2004.

The trial court found that the respondent had failed to show a substantial change in circumstances because he continued to operate the same business and "[h]is gross income from that business was $49,624.86 in 2010, which is virtually the same as the income that was considered by the Court

in 2008." *See* RSA 458-C:7, I(a) (Supp. 2012) (party not prohibited from applying "at any time for a modification [of child support order] based on substantial change of circumstances"). Nevertheless, because the hearing took place three years after entry of the support order under review, the court acknowledged that the petitioner was entitled to review without a showing of a substantial change of circumstances. *See id.* (party may apply for modification three years after entry of order "without the need to show a substantial change of circumstances").

The court found "that the [r]espondent's claims of financial hardship [were] not credible." It specifically found that his checking account balance was over $6,000.00 at the end of 2010 and that "[t]here were many months that the [r]espondent did not pay his child support in spite of having a significant positive balance in his checking account." The court acknowledged, but presumably discounted, the respondent's claim that his business needs a "cash cushion" to start "at the beginning of the spring and to deal with unexpected repairs and other expenses."

The trial court found that the respondent's 2010 gross income was $49,624.86 — that is, $4,135.40 per month. It found that he paid $436.00 in self-employment taxes per month, entitling him to a $218.00 per month deduction under RSA 458-C:2, I (Supp. 2012), resulting in an adjusted gross income of $3,917.40 per month. Applying the child support guidelines, the court calculated the respondent's support obligation to be $233.00 per week.

On appeal, the respondent argues that: (1) the trial court erred by finding that his gross income for purposes of calculating his child support obligation was the same as the business's gross income; (2) the trial court incorrectly applied RSA 458-C:2, I, in finding that the only expense it could deduct was fifty percent of the respondent's self-employment tax; (3) the trial court misinterpreted RSA 458-C:2, IV (2004) so as to impose a confiscatory order; (4) the trial court's finding as to the credibility of the respondent could not be used to support an upward adjustment to the guideline support obligation; and (5) the trial court's order constituted an "inequitable application of the law in violation of [the New Hampshire] [C]onstitution."

We first address the respondent's claim that the trial court erred in equating the gross income of his business with his gross income for purposes of calculating his child support obligation. "Resolution of this issue requires that we interpret RSA 458-C:2, IV, which defines gross income for child support purposes. We review the trial court's statutory interpretation *de novo*. We are the final arbiters of the legislature's intent

as expressed in the words of the statute considered as a whole." *In the Matter of Fulton & Fulton*, 154 N.H. 264, 266 (2006) (quotations and citation omitted).

> When examining the language of the statute, we will ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. As we examine the language, we do not merely look at isolated words or phrases, but instead we consider the statute as a whole. In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme.

*Appeal of Kat Paw Acres Trust*, 156 N.H. 536, 537-38 (2007) (quotations and citations omitted).

The statute defines "gross income" to mean, in pertinent part, "all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from [certain] other government programs." RSA 458-C:2, IV.

■ The respondent argues that the "business profits" includable under the statute must be net of expenses because "the very definition of the word 'profit' necessitates that in order to calculate profits one must remove the expenses from the gross business income." We agree. Profit is defined as "the excess of returns over expenditure in a transaction or series of transactions" or "net income (as in a business) usu[ally] for a given period of time." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1811 (unabridged ed. 2002). Net income, in turn, is defined as "the balance of gross income remaining after deducting related costs and expenses usu[ally] for a given period and losses allocable to the period." *Id*. at 1520. In using the term "profits," the legislature contemplated the deduction of business expenses from business income.

■ The statute also includes as gross income "self-employment income," RSA 458-C:2, IV, but does not define that term. Other courts, however, at least for the purpose of interpreting separation agreements, have noted that "[i]n the context of alimony and child support, 'income' is ordinarily construed to mean gross receipts less business expenses related thereto, because it is the [obligor's] net income that must be referred to in

determining his ability to pay." *Dobbins v. Dobbins*, 397 N.Y.S.2d 412, 414 (App. Div. 1977) (citation omitted); *see Cannan v. Cannan*, 436 N.Y.S.2d 133, 134 (App. Div. 1981). The *Dobbins* court reasoned that "[i]t is improbable that the parties would agree upon a measure of income, such as gross income or receipts, which had no relation to the [obligor's] actual ability to pay support." *Dobbins*, 397 N.Y.S.2d at 414.

■ We conclude that it is similarly improbable that the legislature intended the term "self-employment income" in RSA 458-C:2, IV to mean the gross receipts of a sole proprietorship when a portion of that money is payable to others as legitimate business expenses, and is therefore unavailable for the payment of child support. *See In the Matter of Rupa & Rupa*, 161 N.H. 311, 319 (2010) (noting that "[w]e interpret a statute to lead to a reasonable result" (quotation omitted)). Our prior cases recognize the importance of the availability of income to the obligor for child support. Thus, in *In the Matter of Albert & McRae*, 155 N.H. 259 (2007), we noted that the definition of income for federal income tax purposes is "of little relevance" to determining what is includable as gross income under our child support guidelines. *Albert*, 155 N.H. at 263 (quotation omitted). We explained that, as the facts of that case demonstrated, "income tax returns are an unreliable guide to the income *available for child support purposes*." *Id.* at 264 (emphasis added).

Courts in other jurisdictions have also relied upon the interpretation of language denoting self-employment income in separation agreements to construe the statutory meaning of the term. In *Barber v. Cahill*, 658 N.Y.S.2d 738 (App. Div. 1997), the court cited a case construing the term "earnings" in a divorce settlement to mean "gross income *less allowable business expenses*." *Barber*, 658 N.Y.S.2d at 739 (quotation omitted); *see Bottitta v. Bottitta*, 598 N.Y.S.2d 304, 306 (App. Div. 1993). Relying upon that precedent, the court held that although the child support "statute itself contain[ed] no explicit authorization to deduct the business expenses of a self-employed individual from income . . . [the] Family Court erred in not allowing [such] business expenses." *Barber*, 658 N.Y.S.2d at 739 (citation omitted).

■ Similarly, in *Whelan v. Whelan*, 908 N.E.2d 858 (Mass. App. Ct. 2009), the court interpreted child support guidelines that did "not specifically provide for deduction of business-related expenses from self-employment income" to nevertheless allow such a deduction. *Whelan*, 908 N.E.2d at 866. The guidelines contained a broadly-worded definition of income roughly comparable to RSA 458-C:2, IV's definition of gross income. *Id.* at 865 n.16. "Indeed, these guidelines list[ed] in the definition of income from whatever source both 'income from self-employment' as well as, by way of compari-

son, 'net rental income.' " *Id.* at 866. Notwithstanding the lack of explicit authorization to deduct business expenses from self-employment income, the court found it "implicit that such expenses may be deducted where they are reasonable and necessary for the production of income." *Id.* We find it similarly implicit in RSA 458-C:2, IV that the term "self-employment income" means self-employment income net of legitimate business expenses incurred for the purpose of earning that income. Accordingly, we reverse the trial court's decision to use gross business receipts as the respondent's self-employment income.

The petitioner argues that the respondent "exercised total individual control over the distributions made to himself, his creditors, and to [her] for child support." The argument implicitly rests upon the ground that because the respondent operates a sole proprietorship, payments to the business are payments to him. The trial court appears to have used the same reasoning, noting that "the [r]espondent is a sole proprietor of his business. The trucking business is a d/b/a/, not a corporation." The respondent disputes the amount of actual control he has over paying his business expenses, arguing, "[f]or instance, [that] he cannot choose between fueling his dump truck or receiving a salary. If he fails to put fuel in his truck, he does not earn a salary."

■ We agree with the respondent. His theoretical ability to pay himself rather than his business creditors, and, likewise, the form of his business entity as a "d/b/a" (doing business as) rather than a corporation, are irrelevant in this context. We believe that calculating a parent's ability to pay child support necessitates determining an actual ability to pay, and, therefore, as indicated above, it presupposes the deduction of legitimate business expenses. As the Colorado Court of Appeals stated:

> To embrace . . . a rule [that a child support obligation takes precedence over the self-employed obligor's business expenses] . . . could create the untenable situation that the expenses associated with the production of income be held in abeyance until the child support is paid. The inevitable result of such a disposition of resources, in circumstances such as are present here, would be the eventual loss of all income when the business reached the point where it was no longer a viable, going concern.

*In re Marriage of Crowley*, 663 P.2d 267, 269 (Colo. Ct. App. 1983).

■ These concepts also inform what constitute legitimate business expenses. We have noted that "[u]nlike personal living expenditures, business . . . expenses are costs incurred by the taxpayer in earning gross income." *Thayer v. Thayer*, 119 N.H. 871, 873 (1979) (decided before

adoption of child support guidelines), *superseded by statute as stated in In the Matter of Clark & Clark*, 154 N.H. 420, 425 (2006). Other courts similarly focus upon the income-producing role of business expenses in determining whether they are deductible for purposes of calculating self-employment income for child support purposes. Thus, the *Whelan* court found it implicit in the child support guidelines that business-related expenses "may be deducted where they are reasonable and necessary for the production of income." *Whelan*, 908 N.E.2d at 866. In *Dobbins*, the court ruled that the obligor's support obligation under his separation agreement "should be measured by taking into account all of his income, from whatever source derived, and by deducting therefrom all losses and expenses actually incurred and paid which were directly related to the production of that income." *Dobbins*, 397 N.Y.S.2d at 414. We similarly hold that to be deductible for purposes of determining "self-employment income" under RSA 458-C:2, IV, business expenses must be "actually incurred and paid," *Dobbins*, 397 N.Y.S.2d at 414, and "reasonable and necessary" for producing income, *Whelan*, 908 N.E.2d at 866. It is for the trial judge to determine whether claimed expenses meet those criteria. *See, e.g., Whelan*, 908 N.E.2d at 867. Accordingly, we remand to the trial court to make that determination in this case. In light of our decision, we need not address the respondent's remaining arguments.

*Reversed and remanded.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.