2014 OK CIV APP 2

In the Interest of the CHILDREN OF
Sara KNIGHT, Petitioner/Appellee,

v.

David A. LINCOLN, Jr.,
Respondent/Appellant.

No. 110,544.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Nov. 15, 2013.

Preston Saul Draper, Sweeney, Smith, Draper & Christopher, PLLC., Ada, Oklahoma, for Petitioner/Appellee.

Mary R. Bundren, Bundren Law Firm, P.C., Tulsa, Oklahoma, for Respondent/Appellant, Clay Pettis, Assistant District Attorney, Wewoka, Oklahoma, for Minor Children.

BRIAN JACK GOREE, Judge.

¶ 1 Defendant/Appellant, David Lincoln (Father), seeks review of the trial court's order awarding child support to Plaintiff/Appellee, Sara Knight (Mother), for the support of their minor child. We hold the trial court erred as a matter of law (1) in failing to deduct from Father's self-employment income the ordinary and reasonable expenses necessary to produce the income, and (2) in failing to deduct the corpus in determining the income from the sale of Father's ranch. We modify the order to award $1,259.91 per month in child support and determine the arrearage to be $45,526.83.

¶ 2 Mother brought this paternity action on March 12, 2010, seeking support for the parties' then twelve-year-old daughter. Father appeared and acknowledged paternity. The parties tried the remaining issues on November 4, 2011.

¶ 3 The trial court filed its journal entry of judgment on February 29, 2012, making extensive findings of fact and conclusions of law. It found that the parties had lived together with their child until October 2008, but since that time the child had lived with Mother while Father had visitation but paid no child support. The court made detailed findings as to Father's income for the years 2006–2011, and then averaged the years 2008–2011 to impute annual income of $198,006.20 to Father. For the purposes of determining child support, the court found Father's gross monthly income was $16,500.52, and Mother's was $1,953.00. In a separate order incorporated by reference, the trial court directed Father to pay Mother $1,221.08 per month in child support plus medical support of $102.35 per month, for a total monthly payment of $1,323.43. The trial court determined Father owed Mother an arrearage of $47,622.12 for child support from November 1, 2008 to February 10, 2012. The court also granted Father standard visitation. Father appeals from this order.

¶ 4 Child support proceedings are of equitable cognizance. *Merritt v. Merritt*, 2003 OK 68, ¶ 7, ¶ 73 P.3d 878, 881. In reviewing equitable proceedings, we will affirm the trial court's decision unless the record reveals some error of law or the decision is clearly against the weight of the evidence. *Guymer v. Guymer*, 2011 OK CIV APP 4, ¶ 4, 245 P.3d 638, 639. We will review discretionary determinations for abuse of that discretion. *Broadwater v. Courtney*, 1991 OK 39, ¶ 7, ¶ 809 P.2d 1310, 1312. In an equity case, whenever we determine that the trial court's decision is in error, "we should, whenever possible, render the judgment which, in our opinion, the trial court should have entered." *Bond v. Bond*, 1996 OK CIV APP 3, ¶ 18, 916 P.2d 272, 276.

I

¶ 5 Father's first two propositions of error challenge the trial court's findings as to his

income for child support computation purposes. A person who is determined to be a child's father pursuant to the Uniform Parentage Act, 10 O.S.2011 §§ 7700–101 to 7800, is liable for the child's support and education. 10 O.S. Supp.2012 § 83(A). Pursuant to 10 O.S. Supp.2012 § 83(D), the amount of support must be set in accordance with the child support guidelines (Guidelines) provided in 43 O.S.2011 § 118. In addition, the trial court must impose liability for support for the five years preceding the filing of the action. 10 O.S. Supp.2012 § 83(C).

¶ 6 There is a rebuttable presumption that the amount of the child support award which would result from the application of the Guidelines is the correct amount of child support to be awarded. 43 O.S.2011 § 118 (A). Child support is computed as a percentage of the combined gross income of both parents, and is allocated to each parent according to the parent's percentage contribution to the combined adjusted gross income. 43 O.S.2011 § 118D (A) and (C). Gross income includes both earned income and passive income. § 118B(A)(2) and (3).[1] In computing the gross income of the parents, the court may use whichever is the most equitable of actual income, average income for the past three years, minimum wage, or imputed income. 43 O.S.2011 § 118B (C)(1). In imputing income, the court may consider, among other things, a parent's willful underemployment, the reliability of evidence of income, the parent's past and present employment, the parent's education, training, and ability to work, and the parent's lifestyle. § 118B (D)(2). The court shall include self-employment income and the value of fringe benefits that significantly reduce personal living expenses in computing gross income. § 118B (E) and (F).

■ ¶ 7 Father contends the trial court erred in imputing income in order to determine his child support liability. The record in the present case contains evidence from which the trial court could find that Father was willfully underemployed. Father's testimony that his income was only $583.00 per month is unreliable given other evidence in the record showing that his expenses exceeded that amount yet he somehow paid them, and he had unexplained deposits to his accounts. In addition, the record contains evidence that his lifestyle was incongruent with his claimed income. For example, he paid cash for several parcels of real property over the years, including $300,000.00 for the Denver condominium in which he currently resides. The trial court imputed current income to Father based on the average of Father's actual income for the previous four years. Under these circumstances, we are unable to find any abuse of discretion in the trial court's basis for imputation of income to Father.

■ ¶ 8 However, some of the trial court's calculations as to Father's income are affected by errors of law. Father contends the trial court erred in failing to deduct any business expenses from his self-employment income. Some of Father's income was self-employment income from his ranch operation and from rental properties. For farm income, the trial court used the gross income that Father reported to the Internal Reve-

---

1. § 118B (A)(2) and (3) provide:
   2. "Earned income" is defined as income received from labor or the sale of goods or services and includes, but is not limited to, income from:
   a. salaries,
   b. wages,
   c. tips
   d. commissions,
   e. bonuses,
   f. severance pay, and
   g. military pay, including hostile fire or imminent danger pay, combat pay, family separation pay, or hardship duty location pay; and
   3. "Passive income" is defined as all other income and includes, but is not limited to, income from:
   a. dividends,
   b. pensions,
   c. rent,
   d. interest income,
   e. trust income,
   f. support alimony being received from someone other than the other parent in this case,
   g. annuities,
   h. social security benefits,
   i. workers' compensation benefits,
   j. unemployment insurance benefits
   k. disability insurance benefits,
   l. gifts,
   m. prizes,
   n. gambling winnings,
   o. lottery winnings, and
   p. royalties.

nue Service (IRS) on his Schedule F Profit or Loss From Farming. Pursuant to 43 O.S.2011 § 118B (E)(1), "ordinary and reasonable expenses necessary to produce such income" are deducted from self-employment income in arriving at gross income. The determination of business income for tax purposes is not controlling for the purposes of child support, and accelerated depreciation is expressly excluded from reasonable expenses, while social security tax is specifically included. 43 O.S.2011 § 118B (E)(2).

¶ 9 We have examined Father's Schedule F for the tax years 2008–2009 and conclude that all listed expenditures except those for depreciation, dues, and taxes are ordinary and reasonable expenses necessary to produce the farm income. Therefore, we deduct farm expenses in the amount of $11,306.00 from Father's 2008 income and $10,358.00 from his 2009 income. Father's tax returns show he paid no social security tax; therefore we make no adjustment for social security tax.

¶ 10 Father also argues the trial court erred in failing to deduct expenses from his rental income. The evidence regarding Father's income from his rental properties came from his own exhibits. The expenses of generating rental income are deductible from gross income for the purpose of child support. 43 O.S.2011 § 118B (E)(1). We find all of Father's listed expenses are ordinary and reasonable expenses necessary to produce the rental income except for State and Federal taxes. Therefore, we deduct rental expenses of $1,755.00 for 2010 and

$16,825.00 for 2011[2] from Father's income for those years.

¶ 11 Father argues the trial court erred in attributing the proceeds of the sale of his ranch to income, and in failing to deduct the cost basis from the proceeds. The statutory language of 43 O.S.2011 § 118B (A)(1) is broadly inclusive, defining "gross income" as "earned and passive income from any source, except as excluded in this section." The statute lists types of earned and passive income, but the lists are not exclusive. § 118B (A)(1) and (2). Whether net after tax gain from the sale of property is income for the purpose of child support computation in Oklahoma appears to be a question of first impression.

¶ 12 In *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920), the U.S. Supreme Court interpreted the meaning of "income" in the Sixteenth Amendment, which authorized Congress to tax income. It examined the meaning of the term in common usage and concluded that income was "the gain derived from capital, from labor, or from both combined, ... including profit gained through a sale or conversion of capital assets." *Id.*, 252 U.S. at 207, 40 S.Ct. at 193.[3] Accordingly, capital gains are income for both federal and state income tax purposes. 26 U.S.C. § 61(a)(3) and 68 O.S.2011 § 2353(10). Most states that have considered the question classify realized capital gains as income for the purpose of child support computation, including capital gain from the sale of a residence.[4]

2. For 2010, the trial court found Father received $2,995.00 in gross rental income from the Josephine Street, No. 103 property. According to Father's exhibit, this property rented for $599.00 per month. Therefore the gross rental income received represents five months worth of rental income from the property. We find the allowable amount of expenses for the property to be $351.00 (total expenses of $413.00 minus $62.00 in State and Federal taxes) per month for five months, which equals $1,755.00.

For 2011, the expenses allowed for each property are as follows:
Hale Parkway, No. 2F–$2,076.00 (total expenses of $4,836.00 minus $684.00 in State and Federal taxes, times Father's 50% interest);
Josephine Street, No. 103–$4,212.00 (total expenses of $4,956.00 minus $744.00 in State and Federal taxes);

Josephine Street, No. 209–$5,371.00 (total expenses of $6,229.00 minus $858.00 in State and Federal taxes);
Asbury, No. 104–$5,166.00 (total expenses of $6,246.00 minus $1,080.00 in State and Federal taxes).

3. The Supreme Court later viewed its holding in *Eisner* as too narrow, but useful in distinguishing gain from capital. *C.I.R. v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955).

4. *E.g., Longtine v. Yeado*, 1997 ND 166, 567 N.W.2d 819, 823 ("Capital gains from the house and the profits from the auction sale constitute 'income from any source, in any form, ... [including] capital gains' under the broad definition of gross income."); *Moore v. Moore*, 254 S.W.3d

¶ 13 We conclude that capital gains are properly included as income for the purpose of child support calculation in Oklahoma. Capital gains have historically been understood to constitute income and have not been excluded by the statute. Therefore the trial court properly included Father's capital gains from the sale of his real property in calculating his income.

¶ 14 The gain from the sale or exchange of capital is the *profit* from the transaction. *Eisner v. Macomber*, 252 U.S. at 207, 40 S.Ct. at 193. The return of the corpus or principal is not income. *Thomas v. Thomas*, 1996 OK CIV APP 151, ¶ 9, 932 P.2d 54, 55. Therefore, the corpus should be deducted from the net sale proceeds in order to determine the amount of the gain. The trial court in the present case properly ruled that the corpus should be deducted but, as Mother acknowledges, failed to subtract the ranch corpus in performing its calculations. Therefore, we deduct $154,500.00 attributable to the ranch corpus from Father's income for 2010.

¶ 15 We do not find any merit in Father's other contentions challenging the determination of his income. Father contends the proceeds of the sale of his homestead and his ranch were not income because he reinvested the proceeds in income-producing property. Father cites no authority for this proposition and therefore we will not consider it. However, we will consider the effect of the reinvestment of homestead proceeds in another homestead because the Oklahoma Constitution, Art. 12, § 2, protects the homestead from forced sale for the payment of debts.

¶ 16 The exemption extends to the proceeds of the voluntary sale of the homestead which are in good faith intended to be invested in another homestead. *Field*

v. *Goat*, 1918 OK 315, ¶ 3, 173 P. 364, 365. Although profits from the sale of a homestead are generally exempt from attachment by creditors, it does not follow that such profits can never be counted as income in the calculation of a parent's child support obligation. The purpose of the homestead exemption is to protect the family in its occupancy of the home from the improvidence and demands of creditors. *Burrows v. Burrows*, 1994 OK 129, ¶ 12, 886 P.2d 984, 989. As a matter of public policy, the homestead exemption may not be used to avoid supporting the children it was created to protect. *Id.* at ¶ 15. The record in this case shows that Father chose to become cash poor and property rich. He may not use that condition to avoid child support. Under these circumstances, the trial court did not err in including the proceeds of the voluntary sale of the homestead as income for the purpose of calculating child support.

¶ 17 Father contends the trial court erred in failing to deduct the proceeds from the sale of personal property from the ranch proceeds. He points to no evidence separating the price of any personal property from the sales price of the ranch, and separating the cost of the personal property from that of the ranch. Therefore he has failed to show the trial court's findings were against the clear weight of the evidence.

¶ 18 Father next contends the trial court imputed income from dog boarding and training and livestock sales twice. The evidence was conflicting as to whether he received dog fees from clients other than his father. Where there is conflicting testimony, "[t]he trial court is entitled to choose which testimony to believe as the judge has the advantage over this Court in observing the behavior and demeanor of the witnesses." *Mueggenborg v. Walling*, 1992 OK 121, ¶ 7,

357, 360 (Tenn.2007) ("We now hold that under the Child Support Guidelines all capital gains, including those from an isolated transaction, should be considered in calculating gross income for the purpose of setting child support."); *Wellborn v. Wellborn*, 100 So.3d 1122, 1128 (Ala.Civ. App.2012) ("[W]e conclude that the trial court erred by failing to include income from capital gains in the calculation of the father's gross income."); *In re Marriage of Zisch*, 967 P.2d 199,

202 (Colo.Ct.App.1998) ("[T]he court should initially include the amount of the gain as a component of the recipient's gross income for the year in which the gain was received."); and *Clary v. Clary*, 54 S.W.3d 568, 574 (Ky.Ct.App.2001) ("[W]e affirm the trial court's order to the extent that James' portion of the capital gain on the sale of his farm was included in his gross income, but reverse its decision to prorate the amount over his work-life expectancy.").

836 P.2d 112, 114. The livestock income he asserts was imputed twice took place in 2006. The trial court did not consider this year in calculating Father's income. We will not consider errors "which, if changed, would not affect the result." *Mortgage Bond Co. v. Stephens,* 1937 OK 612, ¶ 20, 74 P.2d 361, 367.

¶ 19 Father next argues the trial court erred in including amounts he received from his parents as his income, asserting the amounts were loans. The Guidelines specifically include gifts as passive income. 43 O.S.2001 § 118B (A)(3)(*l*). The record is devoid of evidence Father made any payments to his parents on any loans. The trial court's finding that Father's parents made gifts of money is not against the clear weight of the evidence.

¶ 20 Father argues the trial court should not have included unemployment benefits and wages because he no longer receives them. He also argues the trial court should not have included deposits to his bank accounts from unknown and unexplained sources. As discussed above, the trial court did not abuse its discretion in imputing income to Father based on Father's willful underemployment. The inclusion of past unemployment benefits, wages, and unexplained deposits are appropriate ways of imputing income under the circumstances. We find no abuse of discretion.

¶ 21 Based on our modifications to Father's income for the years 2008–2011, we find Father's total income for those four years was $595,177.81. His average yearly income was $148,794.45 and his average monthly income was $12,399.54. The parties' combined income is $14,352.54. Pursuant to the Guidelines, the total support amount for one child is $1,346.00. Father's percentage share of the income is 86%, which makes his share of the child support equal to $1,157.56. With the cash medical amount of $102.35 added in, his monthly obligation is $1,259.91. The amount of the arrearage is $45,526.83 plus interest as provided in the trial court's order.

## II

¶ 22 Father's third proposition is the trial court erred in concluding that Father owes $47,622.12 in child support arrearage. He argues the trial court failed to consider that the child, as well as Mother's child from a previous relationship, spent the entire day at his home while Mother was working, and Father provided them three meals a day and clothing from 2008 to 2010. Father failed to provide any documentation of his expenditures, and Mother controverted his testimony. The trial court was entitled to choose which evidence to believe. Its refusal to apply a set-off for Father's care of the children is not against the clear weight of the evidence. We do, however, modify the amount of the arrearage based on our findings in Part I above.

## III

¶ 23 Father's fourth proposition is the trial court erred in ordering standard visitation. He argues standard visitation is inappropriate because he lives in Colorado. At trial, he testified as follows:

Q I assume you have no objection to being awarded standard visitation?

A I would hope that would be awarded. We are still very close and very close to [Mother]. I can't believe that would not be the case.

¶ 24 Father makes no showing he made his objection to standard visitation known to the trial court. Issues not properly presented to the trial court will not be heard for the first time on appeal. *Oklahoma Dep't of Sec. ex rel. Faught v. Wilcox,* 2011 OK 82, ¶ 17, 267 P.3d 106, 110.

## IV

¶ 25 Father's next proposition is the trial court erred when it deviated from the Guidelines by failing to state any reason for deviating from the statutory cap of $15,000.00 in monthly income. The child support order reflects that the trial court did apply the cap. However, based on our modification of the findings as to Father's income, the parties' combined monthly income no longer exceeds

the cap. We have calculated child support without deviating from the Guidelines.

## V

¶ 26 Father's last proposition is the trial court erred by adopting Mother's proposed findings and conclusions in total as its order. Father argues the trial court failed to carefully review the evidence and determine an appropriate amount of gross income, and failed to provide a copy of the journal entry to Father to review prior to entry.

¶ 27 The trial court has broad discretion in directing the manner in which a journal entry is prepared, including directing counsel for one party to prepare a draft. 12 O.S.2011 § 696.2(A). Only the trial court needs to sign the order. 12 O.S.2011 § 696.3. The parties' approval is not required. § 696.3(A)(3). In the present case, Mother submitted comprehensive proposed findings of fact and conclusions of law, while Father submitted a document stating whether he viewed Mother's proposed findings to be true or false. Father's submission could not have been used as a draft order. Under these circumstances, we are unable to find any abuse of discretion.

¶ 28 For the foregoing reasons, the trial court's order is modified to award Mother $1,259.91 per month in child support, plus an arrearage of $45,526.83. The order is AFFIRMED AS MODIFIED.

¶ 29 HETHERINGTON, P.J., and MITCHELL, J., concur.