NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

2d Circuit Court - Plymouth Family Division
No. 2013-171

IN THE MATTER OF JANICE E. MAVES AND DAVID L. MOORE

Argued: April 3, 2014
Opinion Issued: August 13, 2014

Upton & Hatfield, LLP, of Concord (Marilyn B. McNamara, James A. O'Shaughnessy, and Sandra H. Kenney on the brief, and Ms. McNamara orally), for the petitioner.

Martin, Lord & Osman, PA, of Laconia (Judith L. Homan on the brief and orally), for the respondent.

DALIANIS, C.J. The petitioner, Janice E. Maves, appeals, and the respondent, David L. Moore, cross-appeals, the decision of the Circuit Court (Rappa, J.) modifying the respondent's child support obligation. We vacate and remand.

The trial court found, or the record supports, the following facts. The parties, who were divorced in 2004, are the parents of a son, who was fourteen years old at the time of the hearing on the petitioner's motion to modify child support. The son has a "solid relationship" with both parents, who share parenting time, alternating on a weekly basis. Under the initial child support order, the respondent paid $650 per month for the son's support. In 2008, his support obligation was increased to $950 per month. In addition, the

respondent provides the son's health insurance and covers all uninsured medical expenses, pays for sports and academic summer camps, and furnishes the ski pass, clothing, and equipment for the son's ski racing.

As part of the property settlement in the parties' divorce, the respondent was awarded Squam Lakeside Farm, Inc. (SLF), a campground consisting of 119 sites with trailer hook-ups for water, electricity, and sewer. SLF is a Subchapter S corporation (S-corporation); the respondent is the sole shareholder. SLF's profits, losses, and capital gains are reported on the personal federal income tax returns of the respondent, as shareholder.

In 2010, the respondent altered his business plan and, after expending almost $400,000 in legal bills and surveying costs and obtaining the necessary permits from the State, began marketing the campsites as condominiums, rather than as seasonal rentals. Based upon the sale of many of the condominiums, the respondent reported capital gains of $1,000,389 on his 2011 personal tax return.

In 2011, the respondent restructured a loan that he owed to SLF, converting it to a line of credit. Since that time, he has used the line of credit for various expenses, both personal and business-related. At the time of the hearing, the respondent had borrowed $887,754 against the line of credit. The respondent has never made any payments toward the outstanding principal or interest.

In November 2011, the petitioner moved to modify child support, asserting that three years had passed since the previous support order and that circumstances had materially changed, warranting a new support order. See RSA 458-C:7 (Supp. 2013). In addition, the respondent filed two motions to modify orders regarding health insurance and medical expenses and miscellaneous expenses. A final hearing on all motions was held on August 10, 2012.

At the hearing, the parties disagreed about what comprised the respondent's "gross income" for the purpose of determining child support. Paul Buck, a certified public accountant who performs various financial services for the respondent and SLF, including preparing the individual and S-corporation tax returns, testified that because the capital gains from the condominium sales were not transferred from SLF to the respondent "in any way, shape or form," they were not available to the respondent. Rather, he testified that the respondent's "income" in 2011 should be limited to his $39,000 salary and the $2,750 monthly housing benefit for his residence in Holderness.

The trial court determined that the capital gains generated by the sale of the condominium units were "irregular" income that should be considered as

part of the respondent's gross income for the purpose of establishing his child support obligation. See RSA 458-C:2, IV(c) (2004). To calculate the weekly child support obligation, the court used the adjusted gross income figure from the respondent's 2011 federal income tax return, resulting in a support amount of $2,411 per week. Accordingly, the court ordered the respondent, within sixty days, to pay $9,644 for the four weeks from the date of service of the request for modification, November 29, 2011, through the end of 2011. Upon reconsideration, however, the court amended its order to permit payment in monthly installments. The court also concluded that it needed to review the respondent's 2012 federal income tax return to calculate the amount of irregular income from capital gains for 2012. The trial court has held in abeyance further calculation of the respondent's on-going child support pending the outcome of this appeal.

Both parties appealed the support order. In her appeal, the petitioner argues that the trial court erred in: (1) failing to characterize a loan from SLF to the respondent as income for the purpose of child support; (2) failing to impute substantial "regular" income to the respondent as a result of that loan and the respondent's capital gains; (3) treating the capital gains as "irregular" income and calculating the associated arrearage as applicable only to a four-week period at the end of 2011; and (4) using the respondent's adjusted gross income figure, rather than gross income minus legitimate business expenses, to determine his 2011 income. In his cross-appeal, the respondent maintains that the trial court erred in: (1) considering capital gains income from SLF, given that the asset was awarded exclusively to him in the divorce decree and that the capital gains were received by the corporation and, though taxable to him, were not actually distributed to him individually; (2) using his adjusted gross income figure to determine his income for 2011; and (3) arriving at a "grossly excessive" child support obligation based upon his 2011 capital gains income.

Child support is governed by RSA chapter 458-C (2004 & Supp. 2013), and, accordingly, resolution of the issues on appeal requires us to interpret this chapter. As we examine the statutory language, we do not merely look at isolated words or phrases, but instead we consider the statute as a whole. In the Matter of Woolsey & Woolsey, 164 N.H. 301, 304 (2012). In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme. Id. We review the trial court's statutory interpretation de novo. Id. at 303.

We must first determine whether capital gains from the sale of the condominium units should be included in "gross income" for the purpose of calculating the respondent's child support obligation. The statute provides:

> "Gross income" means all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs [ ] except public assistance programs . . . .

RSA 458-C:2, IV. The petitioner asserts that the net profits from the sales of SLF condominium units are "gross income" for purposes of calculating child support. The respondent counters that, because several neighboring states include capital gains in the definition of "gross income," but New Hampshire does not, the legislature intended to exclude capital gains from "gross income" when calculating child support.

We agree with the petitioner. The statute expressly states that "gross income" means "all income from any source, whether earned or unearned," id., and, therefore, it "includes, but is not limited to, the items listed therein, which allows the trial court to count as gross income items that are not specifically listed in the statute." In the Matter of Albert & McRae, 155 N.H. 259, 263 (2007). The statute's broad language evinces the legislature's intent to "minimize the economic consequences to children," RSA 458-C:1 (Supp. 2013), in domestic relations cases by "mandat[ing] that an obligor's entire income be considered." In the Matter of Jerome & Jerome, 150 N.H. 626, 633 (2004) (quotation omitted). Moreover, "[m]ost states that have considered the question classify realized capital gains as income for the purpose of child support computation." In re Children of Knight v. Lincoln, 317 P.3d 210, 214, 214 n.4 (Okla. Ct. App. 2013) (collecting cases). Accordingly, we conclude that capital gains from SLF are "gross income" for the purpose of determining child support.

We are not persuaded by the respondent's argument that, because some states include capital gains in the definition of "gross income" but New Hampshire does not, our legislature specifically intended to exclude them. Our task here is to interpret our child support statute, RSA chapter 458-C; the definition of "gross income" in other states' statutes does not control our analysis.

Furthermore, were we to exclude capital gains from "gross income," a person deriving substantial income exclusively from capital gains would pay no child support. The legislature could not have intended such an absurd result. See Bank of N.Y. Mellon v. Cataldo, 161 N.H. 135, 138 (2010) (refusing to construe statute to lead to absurd result).

The petitioner asserts that both the capital gains from the sales of the condominium units and the money available to the respondent through the line of credit should be included in "gross income." We reject this assertion. The capital gains were treated as SLF funds, which, in turn, the respondent drew down as a line of credit. Including both in "gross income," therefore, would be double-counting the funds available to the respondent for the purpose of child support. Because "[w]e believe that calculating a parent's ability to pay child support necessitates determining an actual ability to pay," Woolsey, 164 N.H. at 306, we find no error in including the capital gains, but excluding the funds obtained through the line of credit, in determining "gross income."

The respondent asserts that because he was awarded SLF as part of the property settlement in the parties' divorce, the capital gains on the sales of the condominium units should not constitute "gross income" for the purpose of calculating child support. He maintains that "[t]he party who is awarded the property [as part of the division of marital assets] is entitled to develop, invest, sell or otherwise manage the property as his or her own for life."

"[P]roperty division and child support serve different functions and are governed by different requirements. . . . [T]he child of divorced parents receives nothing from the property division." Jerome, 150 N.H. at 633 (quotation omitted). Accordingly, "it is not necessarily 'double-counting' to treat the [S-corporation] as marital property, award it to [the respondent], offset the award to [the petitioner], and then use the income from the asset to determine the level of child support." Rattee v. Rattee, 146 N.H. 44, 49 (2001). We note that here we are dealing with capital gains generated in a business context, so we have no occasion to consider whether, for example, capital gains generated from the sale of a personal residence and reinvested in a new residence must be included in gross income for child support purposes.

We next address whether the trial court correctly calculated the "gross income" generated by the sales of the condominium units. To determine "gross income," the trial court used the adjusted gross income figure from the respondent's 2011 tax return. The petitioner contends that this was error, and we agree. "Few courts rely solely on personal income tax returns to determine the amount of income available for purposes of calculating child support." Albert, 155 N.H. at 264 (quotation omitted). Indeed, "how federal income taxation statutes define 'income' is of little relevance to [the] interpretation of gross income under the child support guidelines." In the Matter of State & Taylor, 153 N.H. 700, 704 (2006). Moreover, as the petitioner observes, the respondent's adjusted gross income for federal tax purposes does not reflect his "gross income" for child support purposes because it includes deductions for such things as depreciation, discretionary retirement contributions for the respondent and his current wife, and nonbusiness-related rental property losses -- expenses that were not necessary for producing income. Accordingly,

because the trial court erroneously relied upon the respondent's adjusted gross income, we vacate and remand for a redetermination of his child support obligation.

The petitioner contends that the proper measure of "gross income" is to deduct legitimate business expenses from business profits. We agree. SLF is an S-corporation; the respondent is the sole shareholder. Courts in other jurisdictions have decided that a sole shareholder of an S-corporation is considered to be self-employed. See Glass v. Oeder, 716 N.E.2d 413, 415, 416 (Ind. 1999); Gase v. Gase, 671 N.W.2d 223, 231 (Neb. 2003); see also In the Matter of Hampers and Hampers, 166 N.H. ___, ___ (decided June 24, 2014) (analogizing self-employment to joint ownership of partnership, which, like S-corporation, is subject to "pass through" taxation). In Woolsey, we held that self-employment income includable for the calculation of child support was gross receipts net of legitimate business expenses. Woolsey, 164 N.H. at 306. We explained that business expenses must be "actually incurred and paid" and "reasonable and necessary for producing income" in order to be deductible from self-employment income. Id. at 307 (quotations omitted). "It is for the trial judge to determine whether claimed expenses meet those criteria." Id. Consequently, the trial court should "scrutinize the self-employed parent's financial situation closely, and . . . exclude as a business expense any expenditure which the court in its discretion finds will personally benefit the parent." Merrill v. Merrill, 587 N.E.2d 188, 190 (Ind. Ct. App. 1992). We note that "[i]n situations where the individual with the support obligation is able to control the retention and disbursement of funds by the [S-corporation], he or she will bear the burden of proving that such actions were necessary to maintain or preserve the business." In re Marriage of Brand, 44 P.3d 321, 327 (Kan. 2002); cf. Hampers, 166 N.H. at ___ (holding that limited partner has burden of demonstrating deductibility of partnership's expenses because partner has ability to obtain information to establish propriety of partnership's actions).

Because the respondent has raised the issue on appeal, on remand the trial court shall include written findings addressing whether special circumstances warrant deviation from the application of the support guidelines. See RSA 458-C:5, I (Supp. 2013) (requiring court, where the issue is raised by either party, to make written findings "relative to the applicability" of special circumstances). In light of our decision, we need not address the parties' remaining arguments.

Vacated and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.