# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0615, In the Matter of Robert Stack, Jr. and Kerry Stack, the court on September 16, 2015, issued the following order:**

Having considered the briefs, memorandum of law, and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, Robert Stack, Jr., appeals an order of the Circuit Court (Moran, J.) in the petitioner's divorce from the respondent, Kerry Stack. We affirm.

The trial court found, or the record supports, the following facts. The parties were married in 2000 and separated in 2012. Four children were born of the marriage. In 2013, the petitioner filed a petition for divorce. Thereafter, the parties agreed to a partial final decree of divorce, which awarded one of the parties' motor vehicles to the petitioner "free and clear of any interest of [the respondent]," and awarded the respondent the remaining two vehicles "free and clear of any interest of [the petitioner]."

Following a hearing, the court granted a decree of divorce to the parties based upon irreconcilable differences, and issued an order adopting the parties' stipulation and resolving the matters that remained in dispute. In that order, the court provided that "neither party shall pay child support to the other." The court explained that, "[a]lthough [the respondent] earns approximately $6,000.00 more per month than [the petitioner], and arguably could be required to pay $1,223.00 a month in child support to [the petitioner]," the parties had "approximately equal parenting time" and the child support obligation was "off-set by [the respondent's] agreement to provide health insurance for the children" and "be 100% responsible" for many of the children's expenses. According to the court, the expenses that the respondent agreed to be responsible for exceeded $1,800 per month, and, thus, "compensate[d] for the discrepancy in income."

Regarding the three motor vehicles, the court observed that the parties agreed to allocate them pursuant to their stipulation. However, because the court found that the vehicle awarded to the petitioner had a higher value than the combined value of the two vehicles awarded to the respondent, the court offset that additional value by allocating other assets to the respondent. Further, the court ordered that, if the petitioner remained on the respondent's health insurance plan, the petitioner would be responsible for paying the respondent approximately $123 per week.

Thereafter, each party filed a motion for reconsideration and clarification. In response to the motions, the court ordered, in relevant part, that the petitioner is "required to pay the premium payments associated with maintaining health insurance coverage for him[] only if there is an out-of-pocket cost to [the respondent] for the maintenance of said coverage." This appeal followed.

A trial court has broad discretion in fashioning a final decree of divorce. In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014). Its discretion necessarily encompasses decisions concerning child support and property distribution. Id. We will not overturn a trial court's rulings absent an unsustainable exercise of discretion. Id. This means that we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgments. Id. If the court's findings can reasonably be made on the evidence presented, they will stand. Id.

The petitioner first argues that the trial court erred by failing to include a benefit of the respondent's employment — "Choice Pay" — in her gross income for the purposes of calculating child support. See RSA 458-C:2, IV (2004) (defining gross income for child support purposes). The respondent receives approximately $1,900 worth of Choice Pay benefits each month, and has the option to either receive such benefits as a taxable cash payment or use them to purchase a wide variety of other benefits, including medical and dental plans, life insurance, or retirement plans. According to the petitioner, because the respondent has the option to receive her Choice Pay benefits as cash, the $1,900 "is similar to [a] cash benefit" that should have been included in her gross income when calculating child support. See In the Matter of Clark & Clark, 154 N.H. 420, 423 (2006) (explaining that the items particularized in RSA 458-C:2, IV "share two characteristics[:] First, they are payable in money, and second, they are things that, as a general matter, the recipient has a legal right to obtain and which the provider has a legal obligation to give"). The petitioner asserts that, had the sum been included in the respondent's gross income for the purpose of calculating child support, the calculation would have "result[ed] in a higher guidelines support figure."

To the extent that this argument requires us to engage in statutory interpretation, our review is de novo. In the Matter of Hampers & Hampers, 166 N.H. 422, 433 (2014). However, we need not decide whether the Choice Pay benefits that the respondent receives each month should have been included in her gross income for the purpose of calculating child support, because: (1) this argument fails to account for the fact that the amount of child support is calculated based upon the parents' net income, not their gross income; and (2) in light of the guidelines worksheet prepared by the petitioner, the resolution of the issue has no material impact on the final child support calculation. See RSA 458-C:2, I(e) (Supp. 2014) (defining adjusted gross income for child support purposes to be, in relevant part, gross income less

2

medical support obligation for the children); RSA 458-C:2, VI (2004) (defining net income for child support purposes to be the parents' combined adjusted gross income less various standard deductions); RSA 458-C:3 (Supp. 2014) (explaining that the child support guidelines are generally based upon a percentage of the parents' net income).

In the child support guidelines worksheet that the petitioner submitted to the trial court, after including the approximately $1,900 worth of Choice Pay benefits in the respondent's gross income, the petitioner deducted approximately $1,900 for "[m]edical support for [the] children." See RSA 458-C:2, I(e). As a consequence of the medical support deduction, the petitioner effectively nullified whatever impact including the Choice Pay amount may have had upon the child support calculation, as that calculation is based upon gross income less deductions such as for the children's medical support. See id.

Specifically, a comparison of the gross income figures used by each party (less the respective deductions each party took for the children's medical support), reveals that the two net amounts differ by less than $10. This is so because, although the respondent did not include the Choice Pay benefits in her gross income on her guidelines worksheet, she deducted less than $60 for the children's medical support. Accordingly, including the respondent's Choice Pay benefits in her gross income — and utilizing the medical support deduction in the petitioner's worksheet — would have had a negligible impact on the ultimate child support obligation.

The petitioner next argues that the trial court erred by failing to include, in the respondent's gross income for the purposes of calculating child support, the $123 per week that he was ordered to pay the respondent should he wish to remain on her health insurance plan. We disagree.

The trial court initially ordered the petitioner to pay the respondent $123 per week, and it subsequently clarified that it required the petitioner "to pay the premium payments associated with maintaining health insurance coverage for [the petitioner][] only if there is an out-of-pocket cost to [the respondent] for the maintenance of said coverage." (Emphasis added.) The court's subsequent order, thus, clarified that the respondent would receive a payment from the petitioner only as a reimbursement for costs that she was required to pay to maintain the petitioner on her health insurance plan. Accordingly, the respondent's receipt of this money from the petitioner would not increase the respondent's available income for child support. See In the Matter of Woolsey & Woolsey, 164 N.H. 301, 305 (2012) (recognizing "the importance of the availability of income to the obligor for child support"). Therefore, we conclude that the trial court did not unsustainably exercise its discretion when it did not include the reimbursement payments in the respondent's gross income for child support purposes.

The petitioner additionally argues that the trial court erred when it failed to order the respondent to pay any child support, given that application of the guidelines results in a calculation showing that the respondent owes the petitioner $1,223 per month in child support. See RSA 458-C:4, II (2004) (explaining that there is a rebuttable presumption that the amount of child support resulting from the application of the child support guidelines is the correct amount of child support). He contends that, although the additional expenses that the respondent assumed benefit the children, they "total less than the [child support] guidelines amount" and, therefore, there were no "special circumstances" to justify the court's deviation from the guideline amount. See RSA 458-C:5 (Supp. 2014) (providing that the child support guidelines may be adjusted in special circumstances). We disagree.

The court explained in its order that, although, pursuant to the child support guidelines, the respondent "arguably could be required to pay [the petitioner] $1,223.00 a month in child support," it did not order payments because the respondent had agreed to be responsible for many of the children's expenses, including: (1) extracurricular activities, which totaled at least $624 per month; (2) clothing, which totaled $100 per month; (3) daycare, which totaled $1,100 per month; (4) health insurance; and (5) uninsured medical expenses. Expenses such as these are explicitly listed as "special circumstances" that the court may take into account as it considers whether to deviate from the child support guidelines. See RSA 458-C:5, I(h)(2)(A). Notably, the petitioner does not argue that the trial court erred by considering these expenses in its determination or that any of the actual amounts were incorrect. The enumerated expenses that the respondent agreed to pay exceeded $1,800 per month, significantly in excess of the $1,223 per month guideline amount. Accordingly, we cannot conclude that the court unsustainably exercised its discretion when it did not order that the respondent pay child support.

Finally, the petitioner argues that, because the parties had agreed that each motor vehicle was to be awarded "free and clear of any interest" of the other party, the court effectively invalidated "an explicit term of the divorce stipulation" by allocating non-vehicle assets to offset the unequal value of the vehicles awarded to each party.

"In interpreting the meaning of a divorce decree, we review the decree de novo." In the Matter of Georgakilas & Georgakilas, 157 N.H. 662, 664 (2008). "We consider the intent of the parties as expressed in the language of the stipulation," id., and first look to the plain meaning of the language used, see In the Matter of Floros and Bell, 145 N.H. 401, 403 (2000).

In the parties' stipulation, the phrase "free and clear of any interest" is not defined. Dictionaries are of value when interpreting undefined terms in agreements. See Hudson v. Farm Family Mut. Ins. Co., 142 N.H. 144, 146-47

4

(1997); see also In the Matter of Raybeck & Raybeck, 163 N.H. 570, 572-73 (2012) (interpreting divorce decree term according to its common meaning and utilizing dictionaries to define term). The word "interest" in this context refers to the title or ownership of property. See Random House Webster's Unabridged Dictionary 993 (2d ed. 2001) (defining interest, in pertinent part, to be "a share, right, or title in the ownership of property"); Webster's Third New International Dictionary 1178 (unabridged ed. 2002) (similarly defining interest to be a "right, title, or legal share in something" and "something in which one has a share of ownership or control"). The phrase "free and clear" is defined as being "without liens or other legal claims." Webster's Third New International Dictionary, supra at 905.

As the trial court observed, the parties agreed in their stipulation to award ownership of the vehicles to one another. Here, the trial court did nothing to alter that agreement. The stipulation was silent as to whether the court could consider the value of each vehicle when distributing other marital assets. By allocating other assets to offset the unequal value of the vehicles, the court did not disturb the agreed-upon ownership interests of the parties in each vehicle. Thus, the parties own their respective vehicles free and clear of any claim of ownership of the other party. Accordingly, we conclude that the trial court did not, as the petitioner suggests, "undo[] an explicit term of the divorce stipulation," and, therefore, it did not err.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**

5